1    Annick M. Persinger (State Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
2    1970 Broadway, Ste 1070
Oakland, CA 94612
3    (510) 254-6808
*apersinger@tzlegal.com*
4

5    Scott Edelsberg (State Bar No. 330990)
**EDELSBERG LAW, P.A.**
6    1925 Century Park E #1700
Los Angeles, CA 90067
7    (310) 438-5355
*scott@edelsberglaw.com*
8

9    *Attorneys for Plaintiff*

10                **IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11

12   ALEXANDRA MANDEL, on behalf of
herself and all others similarly situated,
13
                                            Case No.   4:22-cv-00071
                      Plaintiff,
14                                          **CLASS ACTION COMPLAINT**
             v.
15                                          (JURY TRIAL DEMANDED)
     GRANDE COSMETICS, LLC,
16
                      Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

---

**CLASS ACTION COMPLAINT**

1

**CLASS ACTION COMPLAINT**

2      Plaintiff Alexandra Mandel brings this action on behalf of herself and all others similarly

3   situated against Grande Cosmetics, LLC ("Grande Cosmetics"). Ms. Mandel alleges as follows

4   upon personal knowledge as to herself and her own acts and experiences and, as to all other matters,

5   upon information and belief.

6   **I.     NATURE OF ACTION**

7      1.    Defendant Grande Cosmetics, an American manufacturer specializing in beauty

8   products, sells GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum,

9   and GrandeHAIR Enhancement Serum (hereafter, the "Enhancement Serums" or "Products")

10  without a prescription. Grande deceptively sells the Enhancement Serums as cosmetics, or

11  "serums," with no identified active drug ingredient, and no warning of serious side effects.

12  However, the Enhancement Serums contain the active ingredient isopropyl cloprostenate ("ICP"),

13  which is in the same class of compounds as the active ingredient found in prescription drugs that

14  grows eyelashes, like Latisse—which the FDA has approved for use only under the supervision of

15  a physician due to the possible adverse effects associated with its active ingredient. The Food and

16  Drug Administration ("FDA") has warned manufactures that ICP is associated with potential serious

17  side effects like iris discoloration, and has further warned that ICP lash and brow products are not

18  safe for use except under supervision of a licensed physician.[1]

19     2.    Because the Enhancement Serums are drugs within the meaning of Cal. Health &

20  Safety Code §§ 109875, *et seq.*, Grande Cosmetics was required to seek regulatory approval before

21  selling the Enhancement Serums to California consumers. Grande Cosmetics sought no such

22  approval, and instead concocted a scheme to take the Enhancement Serums straight to market by

23  selling them as cosmetics instead of prescription drugs. Even though the Enhancement Serums are

24  unapproved drugs that should never have been available for sale to consumers, Grande Cosmetics

25  unlawfully sold hundreds of thousands of units of the Enhancement Serums to California consumers

26

27  _____

28  [1] *See* April 18, 2011 FDA Letter Attached as Exhibit 1

**CLASS ACTION COMPLAINT**

1    at around $65-$125 apiece.

2         3.    Like many other California consumers, Ms. Mandel purchased the Enhancement

3    Serums without knowing that they were new drugs with potentially serious side effects not

4    reasonably expected from a cosmetic—including iris discoloration, the development of growths in

5    the eye, and the complete loss of eyelashes. To stop Grande Cosmetics' sale of unapproved drugs

6    to California residents and to recover monetary relief for similar purchasers, Ms. Mandel brings this

7    action on behalf of herself and similarly situated purchasers in California based on Grande

8    Cosmetics' violation of (1) California's Unfair Competition Law, Business and Professions Code

9    §§ 17200, *et seq.*, (2) California's False Advertising Law, Business and Professions Code §§ 17500,

10   *et seq.*, and (3) California's Consumer Legal Remedies Act, Civil Code §§ 1750, *et seq.* ("CLRA").

11   **II.    PARTIES**

12        4.    Plaintiff Alexandra Mandel is and was at all relevant times a citizen of the State of

13   California, residing in Alameda County, California. Ms. Mandel purchased and used GrandeLASH-

14   MD Lash Enhancing Serum for personal, family, or household purposes. Ms. Mandel placed two

15   orders for GrandeLASH on Amazon in December 2015 and January 2016. Additionally, she

16   purchased GrandeLASH at Stript Wax Bar in Oakland, California, three times between August 2017

17   and July 2018.

18        5.    Ms. Mandel examined the Enhancement Serums' packaging, labeling, and other

19   marketing materials. If Grande Cosmetics had properly disclosed the true facts regarding

20   GrandeLASH-MD and its ingredients, Ms. Mandel would not have purchased GrandeLASH-MD.

21   Ms. Mandel reasonably understood the marketing of GrandeLASH-MD to mean or imply that the

22   sale of GrandeLASH-MD is lawful.  Based on the labeling and marketing of GrandeLASH-MD,

23   Ms. Mandel reasonably believed that she was purchasing products that were legally saleable. Ms.

24   Mandel would not have purchased GrandeLASH-MD had she known that it was being sold illegally,

25   contained drug ingredients, and/or contained ingredients known to cause adverse effects.

26        6.    Ms. Mandel stopped using GrandeLASH-MD when she developed a growth in her

27   eye that baffled her doctors who did not know she was using the GrandeLASH-MD and that had to

28

**CLASS ACTION COMPLAINT**

be surgically removed. After learning in January 2022 about the true properties of ICP and of Defendant's fraud, Ms. Mandel believes that she developed the growth in her eye due to her use of GrandeLASH-MD.

7.      Ms. Mandel would consider purchasing Enhancement Serums in the future if they were sold under different terms that complied with the law, and/or if she could be assured that they no longer contained an undisclosed drug ingredient associated with serious undisclosed side effects.

8.      Defendant Grande Cosmetics, LLC is a cosmetics company headquartered in Valhalla, New York. Grande Cosmetics markets and sells the Enhancement Serums directly through its website, as well as through popular retailers.

## III.    JURISDICTION AND VENUE

9.      **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. In total, there are well over 100 members of the proposed Class that are known to exist. Complete diversity exists between at least one plaintiff—Ms. Mandel, a citizen of California—and one defendant—Defendant Grande Cosmetics headquartered in, and therefore a citizen of, New York.

10.     **Personal Jurisdiction.** This Court has personal jurisdiction over Grande Cosmetics because Grande Cosmetics conducts substantial business in this District and in the State of California through its sale of products directly to California consumers through its website and also through its California-based retailers. In addition, Plaintiff and the Classes have suffered injury as a result of Grande Cosmetics' acts in this District.

11.     **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.    ALLEGATIONS COMMON TO ALL CLASS MEMBERS

### A.      The Enhancement Serums Are Unapproved Drugs

12.     The Enhancement Serums are unapproved new drugs because the overall circumstances of Grande Cosmetics' sale of Enhancement Serums demonstrate that Grande

Cosmetics' objective intent in selling the Enhancement Serums was to affect the structure and function of the body by growing hair.

### i.   Statutory Framework

13.   Grande Cosmetics' business practices violate the California Health and Safety Code that prohibits the sale of any new drug or misbranded product absent preapproval. Cal. Health & Safety Code §§ 111550, 110398, 111440; *see also* 21 U.S.C. § 355(a).

14.   By violating the Health and Safety Code and federal law, Grande Cosmetics violated the unlawful prong of the UCL. By selling the Enhancement Serums under the false pretense that they are cosmetics and by failing to disclose that it is a drug, Grande Cosmetics also violated the FAL, and the CLRA.

15.   Any product considered a new drug that is sold without an approved new drug application ("NDA") is misbranded for purposes of California Health and Safety Code §§ 110398 and 111440.

16.   A substance is a drug if it is "intended to affect the structure of any function of the body of man or other animals." Cal. Health & Safety Code § 11014; 21 U.S.C. § 321(g).

17.   Under 21 C.F.R. § 310.527(b), incorporated into California law by California Health and Safety Code § 110110, any over-the-counter drug purportedly intended to grow hair is a new drug *per se* for purposes of the FDCA, and thus also for California Health and Safety Code § 111550.

18.   The Enhancement Serums are also "misbranded" drugs under various provisions of the Cal. Health & Safety Code, including:

(i) under § 111330 because the product labeling is misleading insofar as it fails to disclose all significant safety concerns and/or fails to disclose that it is a drug, and is a new drug sold without an approved new drug application;

(ii) under § 111335, because the product labeling and packaging do not conform to the requirements of Chapter 4 (commencing with § 110290);

(iii) under § 111355 because the product labeling does not bear the established name and quantity of each active ingredient;

(iv) under § 111360, because Grande Cosmetics fails to include in all advertising materials a summary of all side effects and contraindications;

(v) under § 111375, because the product labeling does not bear adequate warnings as to unsafe dosages or methods or duration of administration or application; and/or

(vi) under § 111400, because it may be dangerous to health when used in the suggested frequency, duration, or dosage.

19.     Under the Health & Safety Code, it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug that is misbranded, or to misbrand any drug. Cal. Health & Safety Code §§ 111440, 111445.

20.     Because the Enhancement Serums are "new drugs" sold without approved new drug applications, and because they are misbranded drugs, the Enhancement Serums are sold illegally.

21.     The foregoing misbranding is misleading to reasonable consumers because by failing to, for example, identify an active ingredient to summarize all side effects deceives consumers into believing that it is a safe cosmetic with no active drug ingredient associated with serious side effects.

22.     For example, in a similar context where a manufacturer was making lash and brow products with ICP the FDA explained that similar "appearance" claims that Grande Cosmetics makes here were misleading "because their labeling makes misleading statements regarding the product's safety and fails to reveal material facts with respect to consequences that may result from the use of the product." The FDA went on to warn that ICP lash and brow products "are not safe for use except under supervision of a practitioner licensed to administer them."[2]

23.     The FDA further explained that: ""RapidLash" and "NeuLash" are adulterated cosmetics under section 601(a) because they bear or contain a deleterious substance that may render them injurious to users under the conditions of use prescribed in their labeling. **Specifically, "RapidLash" and "NeuLash" contain isopropyl cloprostenate which**, under the conditions of use prescribed in the labeling, **may cause the following injuries: ocular irritation, hyperemia,**

---

[2] *See* April 18, 2011 FDA Letter Attached as Exhibit 1

**CLASS ACTION COMPLAINT**

1    **iris color change, macular edema, ocular inflammation, and interference with intraocular**

2    **pressure reduction therapy**.   In addition, as mentioned above, prostaglandin analogs for

3    ophthalmic use are currently classified as Pregnancy Class C; women of childbearing age are

4    considered at risk for injury." (emphasis added).

5           **ii.**   ***The presence of ICP along with the marketing of the Enhancement Serums confirm that they are drugs under the Sherman Law.***

6        24.    Isopropyl cloprostenate ("ICP") is a prostaglandin analog that grows hair by

7    extending the length of the hair cycle.

8        25.    If ICP is present in a product and the marketing of the product contains "appearance

9    claims," then the product is a drug under the Sherman Law.  All of the Enhancement Serums are

10    drugs because they contain ICP and are marketed with the following "appearance claims."

11        a.   GrandeLASH-MD, which is labeled and marketed as a "Lash Enhancing Serum" that

12           "promote[s] the appearance of naturally longer, thicker looking lashes," contains

13           isopropyl cloprostenate.[3]



---

[3] *See*, *e.g.*, https://grandecosmetics.com/products/grandelash-md (last visited August 17, 2021).

**CLASS ACTION COMPLAINT**

b.  GrandeBROW, which is labeled and marketed as a "Brow Enhancing Serum" that "promote[s] the appearance of fuller, bolder looking brows in just 6-8 weeks," contains isopropyl cloprostenate.[4]



---

[4] *See*, *e.g.*, https://grandecosmetics.com/products/grandebrow (last visited August 17, 2021).

**CLASS ACTION COMPLAINT**

c.  GrandeHAIR, which is labeled and marketed as a "Hair Enhancing Serum" "for fuller & healthier looking hair," contains isopropyl cloprostenate.[5]



26.  The presence of the prostaglandin analog, isopropyl cloprostenate, along with appearance claims like "enhancing," "promote the appearance of naturally longer, thicker looking lashes," "promote the appearance of fuller, bolder looking brows," and "for fuller & healthier looking hair," indicate that the Enhancement Serums are "intended to affect the structure and function of the body" and is a drug as defined by section 201(g)(1)(C) of the Act (21 U.S.C. § 321(g)(I)(C)).

---

[5] *See*, *e.g.*, https://grandecosmetics.com/products/grandehair-rejuvenation-serum (last visited Oct. 5, 2021)

**CLASS ACTION COMPLAINT**

iii. *Additional circumstances confirm that the Enhancement Serums are drugs because they show that Grande Cosmetics' objective intent in selling the Serums was to grow hair.*

27.    Although the marketing claims discussed above combined with the presence of ICP standing alone sufficiently demonstrate that the Enhancement Serums are new drugs, additional circumstances confirm that it was Grande Cosmetics' objective to sell ICP-containing Serums to affect hair growth, including the price of the Products, the timeframe for seeing benefits from the Products, and the actual function of the Products.

28.    **Price Disparity.** All of the Enhancement Serums retail for a higher price than the average cosmetic.

  a. GrandeLASH-MD retails for approximately $65 for a 3-month supply and $120 for a 6-month supply.[6]

  b. GrandeBROW retails for approximately $70 for a 4-month supply.[7]

  c. GrandeHAIR retails for approximately $65 for 20 mL and $125 for 40 mL.[8]

  d. GrandeMASCARA, on the other hand, retails for approximately $25.[9]

29.    **The timeframe for seeing benefits.** Unlike cosmetics such as mascara that provide instant beautification benefits, the marketing of each of the Enhancement Serums indicates that those products take weeks if not months to work.

  a. The marketing of GrandeLASH-MD cites to a consumer study where, after 12 weeks, "94% saw healthier looking lashes," "91% saw longer looking lashes," and "97% saw more visible lashes." The instructions for "how to use" GrandeLASH-MD state that "[d]ue to the length of the lash cycle, apply every day for a full 3 months. After desired improvement is achieved, apply every other day for maintenance." Additionally, as

---

[6] *See*, *e.g.*, https://grandecosmetics.com/products/grandelash-md (last visited Oct. 5, 2021).
[7] *See*, *e.g.*, https://grandecosmetics.com/products/grandebrow (last visited Oct. 5, 2021).
[8] *See*, *e.g.*, https://grandecosmetics.com/products/grandehair-rejuvenation-serum (last visited Oct. 5, 2021)
[9] *See*, *e.g.*, https://grandecosmetics.com/products/grandemascara (last visited Oct. 5, 2021).

shown below, Grande Cosmetics markets GrandeLASH-MD with "before-and-after" pictures, which indicate noticeable eyelash growth after 12 weeks.[10]





*Based on a 12 week consumer study with 30 subjects. Results will vary.



*Based on a 12 week consumer study with 30 subjects. Results will vary.

---

[10] *See, e.g.*, https://grandecosmetics.com/products/grandelash-md (last visited Oct. 5, 2021).

**CLASS ACTION COMPLAINT**

b.  The marketing of GrandeBROW states that it "promote[s] the appearance of fuller, bolder looking brows in just 6-8 weeks, with full improvement in 4 months."[11] The marketing cites to a 16 week consumer study where "100% saw fuller looking brows," "94% saw healthier looking brows, and 91% saw thicker looking brows." The instructions for "how to use" GrandeBROW state that "[d]ue to the length of the brow cycle, apply every day for a full 4 months. After desired improvement is achieved, apply every other day for maintenance." Grande Cosmetics markets GrandeBROW with "before and after" pictures, which indicate noticeable brow growth after 16 weeks.[12]





*Based on a 16 week consumer study with 30 subjects. Results will vary.

---

[11] *See*, *e.g.*, https://grandecosmetics.com/products/grandebrow (last visited Oct. 5, 2021).
[12] *See*, *e.g.*, https://grandecosmetics.com/products/grandemascara (last visited Oct. 5, 2021).

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.  The marketing for GrandeHAIR states that the "appearance of healthier, thicker looking hair" improves "in 8 weeks, with full improvement in 4 months." The marketing cites to a 16-week expert clinical grader evaluation where "97% saw improved hair thickness," and "97% saw less hair thinning." The instructions for "how to use" GrandeHAIR states that droplets should be applied nightly until full improvement, and then every other day for maintenance. Grande Cosmetics markets GrandeHAIR with "before and after" pictures, which indicate noticeable hair growth.





30.     **The actual function of the product.** The ICP in the Enhancement Serums grow lashes, brows, and hair by extending the length of the hair cycle.

31.     Isopropyl cloprostenate is one of a class of chemicals known as prostaglandin analogs, which have long been used to reduce intraocular pressure in glaucoma patients.[13] According to the Glaucoma Research Foundation, "prostaglandin analogs work by increasing the outflow of intraocular fluid from the eye."[14] A well-known side effect of glaucoma treatments containing prostaglandin analogs is that they cause eyelash growth.[15]

32.     In 2008, the FDA approved Latisse®, whose active ingredient, bimatoprost is a prostaglandin analog like ICP known for increasing eyelash hair length, thickness, and darkness in patients with hypotrichosis (or inadequacy) of the eyelashes.[16] Latisse is classified as an ophthalmic drug and cannot be obtained without a prescription.[17]

33.     The FDA has found that, like the active ingredient in Latisse, the prostaglandin analog, isopropyl cloprostenate is "well known to have an effect on the structure or function of the body," and that, accordingly, products containing isopropyl cloprostenate "are drugs as defined by section 201(g)(1)(C) of the [Federal Food, Drug, and Cosmetic] Act (21 U.S.C. § 321(g)(l)(C))."[18]

34.     Because they are objectively intended to affect the structure or function of the body, as demonstrated by the fact that it contains isopropyl cloprostenate, and the fact that marketing contains "appearance" claims like "longer looking," as well by these other circumstances surrounding their sale, Enhancement Serums qualify as drugs under the Sherman Law.

**B.      The Fact that the Enhancement Serums Are Unapproved Drugs with an Ingredient Associated with Serious Side Effects Is Material to Consumers**

35.     In marketing the Enhancement Serums, Grande Cosmetics materially omits and does

---

[13] Exhibit 1.

[14] Prostaglandin Analogs, https://www.glaucoma.org/treatment/medication-guide.php#prostaglandin_analogs (last updated June 19, 2020).

[15] *See Id.*

[16] *See* Latisse Approval Letter (Dec. 24, 2008), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2008/022369s000_Approv.pdf.

[17] *See* Latisse Full Prescribing Information (Mar. 2012), https://www.accessdata.fda.gov/drugsatfda_docs/label/2012/022369s005lbl.pdf.

[18] Exhibit 1.

**CLASS ACTION COMPLAINT**

not adequately disclose to consumers that they are sold illegally without proper government approval.

36.     By omitting this information, Grande Cosmetics actively conceals material facts and leads reasonable consumers to believe they are purchasing Products whose sale does not violate federal and/or state law. Specifically, by marketing and selling the Enhancement Serums, Grande Cosmetics effectively represents to consumers that the Products are recognized as safe by the relevant regulatory bodies, and that they are legally saleable, when in reality, they are not.

37.     In addition to being drugs that are marketed and sold illegally, the Enhancement Serums contain the prostaglandin isopropyl cloprostenate, which is associated with serious adverse effects. Specifically, the FDA has found that isopropyl cloprostenate may cause side effects to the eye including, but not limited to, ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy.[19]  In marketing and selling the Enhancement Serums, Grande Cosmetics materially omits and does not adequately disclose to consumers that isopropyl cloprostenate is known to cause eye-related diseases like hyperemia, macular edema, ocular inflammation, and the lowering of intraocular pressure.  Grande Cosmetics also materially omits that when prostaglandin analogs, like ICP and bimatoprost, are applied to areas near the face, they can cause excess hair growth outside the treatment area, for instance on the cheek. Grande Cosmetics further fails to mention that ICP can cause clumps of hair, brows, and lashes to completely fall out instead of grow.

38.     Grande Cosmetics lists amino acids, hyaluronic acid, and vitamin E as "key ingredients" in GrandeLASH-MD and GrandeBROW,[20] but neglects to mention that it is the Products' active drug ingredient isopropyl cloprostenate that causes hair growth. Similarly, Grande Cosmetics lists Procapil, ginkgo, and flower extracts as "key ingredients," when in fact, it is the drug ingredient isopropyl cloprostenate that causes hair growth. Reasonable consumers want to

---

[19] *Id.*

[20] Ingredients, GrandeLASH-MD Lash Enhancing Serum, https://grandecosmetics.com/products/grandelash-md (last visited Aug. 13, 2021).

understand whether products have active ingredients, and the effect that they may have—especially when the Product is applied and kept on at night around the eye and face.

39.    Furthermore, numerous consumers have complained online that GrandeLASH-MD has caused side effects including, among other things, burning, itching, redness, discoloration, swelling, styes, severe dry eye, eyelash fallout, and drooping eyelids. For example:

- "I only used GrandeLash for a week and after the first use I experienced eyelid redness and bloodshot eyes. I figured it was just a first-time irritation thing, but had to use concealer to cover the eyelid redness. The next day it was worse. My eyelids were beginning to look dark brown/purple from the lash line to the eyebrow; darkest at the crease. I kept using the serum for the next 4 days, hoping it was just because I wasn't getting enough sleep that my eyes looked so dark, like I had been punched. I went to bed early for the next week to try to get 8+ hours of sleep, hydrated a ton and used a vitamin C eye cream, but I looked just as bad; kind of sickly honestly. Finally I looked up eyelid discoloration with GrandeLash and discontinued use that day. As quickly as the next morning I noticed a difference, and by the following day the discoloration was totally gone."[21]

- "Ouch! I tried this on one eye as a test and OMG it stings like crazy. I did not dare to open my eye, so I put a sleeping mask on to keep it shut."[22]

- "Don't know if this works? I am highly allergic to something in this. My eyeballs were red immediately after use. Tried a few more days and just got worse."[23]

- "This lash serum burned my eyes horribly and I woke up the next day with extremely bloodshot eyes and swollen lids."[24]

- "I did 12 weeks of this and it did nothing for me but cause dark circles (Latisse did the same for me but actually worked)[,] irritation, and a couple of styes."[25]

---

[21] BellaByrne, Sephora Community (Aug. 2021), https://community.sephora.com/t5/Everything-Eyes/GrandeLASH-sunken-eyes/m-p/5921011#feedback-success.

[22] Yvetteski Review, https://www.makeupalley.com/product/showreview.asp/ItemId=201537/Grande-Cosmetics-GrandeLASH-MD-Lash-Enhancing-Serum/Unlisted-Brand/Lash-Treatments (last visited Aug. 23, 2021).

[23] AngelaBrooke 76 Review, https://www.makeupalley.com/product/showreview.asp/ItemId=201537/Grande-Cosmetics-GrandeLASH-MD-Lash-Enhancing-Serum/Unlisted-Brand/Lash-Treatments (last visited Aug. 23, 2021).

[24] Michelle R. Review (May 9, 2021), https://grandecosmetics.com/collections/lash-serum/products/grandelash-md.

[25] Penny 25 Review, Sephora (Apr. 22, 2020), https://www.sephora.com/product/grandlash-tm-md-lash-enhancing-serum-P419219?skuId=1923275&icid2=skugrid:p419219.

**CLASS ACTION COMPLAINT**

- "I just had to see an ophthalmologist as the colors in my right eye have started to bleed together. I have green eyes (green inner iris, with deep blue outer iris), and the bleu part of my eye is getting thicker on one side and almost bleeding into my inner iris, towards my pupil. It is quite noticeable to me, as my eyes are no longer symmetrical and one eye appears darker than the other. I've been using the Grande Lash-MD Lash Enhancing Serum for a few months now, so only just connecting the dots."[26]

40.     Consumers have also complained that GrandeBROW has caused side effects including loss of brow hairs, discoloration, sunken eyes, and change of iris color. For example:

- "This product caused discoloration all over my eyelid and it caused my eyes to appear more sunken in. It's like the premature aging I never asked for."[27]

- "While SOME hair grew along my brows (not much, and not in places where I actually put the product), hair ALSO grew along the side AND underneath the eye. I now have hairy eyes, which is not what I was going for at all."[28]

- "Yes, grows brows, however, do not use if only using on one brow! I am now stuck with one brow being three shades darker than the other one!"[29]

- "When I first used this product, I had amazing results. When I started my second tube, applying every other day as instructed my new fabulous brows fell out."[30]

41.     Consumers have also complained that GrandeHAIR has caused side effects, such as irritation and dryness.[31]

42.     Grande Cosmetics is aware that the Enhancement Serums may cause such damage due to an active drug ingredient. Despite notice and knowledge of the injuries caused by the Enhancement Serums via the numerous consumer complaints Grande Cosmetics has directly received and which are publicly available on the internet, Grande Cosmetics has failed and/or refused to provide an adequate remedy for the systemic injuries caused by the Enhancement Serums.

---

[26] AnnieSMR Comment (Mar. 2, 2021), https://community.sephora.com/t5/Everything-Eyes/Grandelash-change-eye-color/m-p/4230222.
[27] MIM99 Review (June 2, 2021), https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[28] DCMouse Review (Feb. 18, 2019), https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[29] Expertchef Review (July 22, 2021), https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[30] Review (Apr. 15, 2018), https://www.sephora.com/product/grandebrow-brow-enhancing-serum-P419218?skuId=2114817&icid2=skugrid:p419218.
[31] *See, e.g.,* "Doesn't Work," https://www.ulta.com/p/grandehair-enhancing-serum-pimprod2018702 (last visited Aug. 23, 2021).

CLASS ACTION COMPLAINT

43.     Not only does Grande Cosmetics fail to disclose the possibility of severe and potentially permanent side effect, Grande Cosmetics represents that while "sensitivity" to the product is rare, a few users may experience "mild irritation" when first using the GrandeLASH-MD.[32]

44.     Whether a product has adverse side effects caused by a drug ingredient is material information that reasonable consumers would consider in deciding to buy the Products. Indeed, The FDA has advised that, because of its potentially harmful effects, products containing isopropyl cloprostenate are "not safe for use except under the supervision of a practitioner licensed by law to administer them."[33]

45.     Reasonable consumers would consider the omitted facts to be important in determining whether or not to purchase the Enhancement Serums.

46.     Grande Cosmetics omitted the above-described material information with the knowledge that its omissions would mislead and deceive consumers. Alternatively, Grande Cosmetics was reckless in not knowing that the omissions were deceptive and/or misleading.

47.     Plaintiff and Class Members relied, to their detriment, on Grande Cosmetics to distribute safe products. Instead, Grande Cosmetics marketed and sold Products that contain an ingredient known to cause serious adverse effects.

48.     As the direct and proximate result of Grande Cosmetics' deceptive and/or misleading material omissions, Plaintiff and putative Class Members have suffered injury-in-fact and a loss of money or property through the out-of-pocket costs expended to purchase the Enhancement Serums.

49.     Grande Cosmetics has not recalled, relabeled, or reformulated the Enhancement Serums, nor has it warned consumers about the dangers associated with using the Enhancement Serums.

---

[32] Frequently Asked Questions, https://grandecosmetics.com/pages/faq (last visited Oct. 5, 2021).
[33] Lifetech Resources LLC Warning Letter (Apr. 18, 2011), https://wayback.archive-it.org/7993/20170111100914/http:/www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm251951.htm.

## V.   CLASS ACTION ALLEGATIONS

50.     Plaintiff incorporates and realleges the above paragraphs.

51.     Plaintiff brings this action on behalf of herself and the members of the proposed Class, which consists of:

> All California consumers who purchased an Enhancement Serum for personal, family, or household purposes from the beginning of the applicable statutory period through present. Excluded from the Class are Defendant; any entity in which Defendant has a controlling interest; and any legal representative, heir or assign of Defendant. Also, excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

52.     The members of the Class are so numerous that joinder is impractical. The Class consist of thousands of members, the precise number which is within the knowledge of and can be ascertained only through Grande Cosmetics' records.

53.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a.   Whether the Enhancement Serums qualify as drug products under California laws governing food, drugs, and cosmetics;

b.   Whether the Enhancement Serums are misbranded under California laws governing food, drugs, and cosmetics;

c.   Whether the manufacture, marketing, or sale of the Enhancement Serums are unlawful under California laws governing food, drugs, and cosmetics;

d.   Whether Grande Cosmetics had a duty to disclose material facts regarding the Enhancement Serums' status as drugs, safety concerns associated with the ICP in the Enhancement Serums, or the illegality of the sale of the Enhancement Serums;

e.   Whether Grande Cosmetics had a duty to not misrepresent material facts regarding the Enhancement Serums' status as a drug, safety concerns associated with the Enhancement Serums, or the illegality of the sale of the Enhancement Serums;

f.   Whether Grande Cosmetics failed to disclose material facts regarding safety concerns associated with the Enhancement Serums;

g.   Whether Grande Cosmetics failed to disclose material facts regarding the Enhancement Serums status as drugs or the illegality of the sale of the Enhancement Serums;

h.   Whether Grande Cosmetics' nondisclosures and misrepresentations would be material to a reasonable consumer;

**CLASS ACTION COMPLAINT**

i.   Whether Grande Cosmetics' nondisclosures and misrepresentations constitute an unlawful business practice in violation of the UCL;

j.   Whether Grande Cosmetics' nondisclosures and misrepresentations constitute an unfair business practice in violation of the UCL;

k.   Whether Grande Cosmetics' nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the UCL, CLRA, or FAL;

l.   Whether Grande Cosmetics knowingly or willfully misrepresented or failed to disclose the Enhancement Serums' status as drugs, significant safety concerns associated with the ICP in the Enhancement Serums, or the illegality of the Enhancement Serums sales;

m.  Whether Grande Cosmetics was unjustly enriched by receiving moneys in exchange for the Enhancement Serums;

n.   Whether the challenged practices harmed Plaintiff and members of the Class; and

o.   Whether Plaintiff and members of the Class are entitled to damages, restitution, equitable relief, and/or injunctive relief.

54.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff, like all members of the Class, purchased Enhancement Serums, GrandeLASH-MD, not knowing that they were unapproved drugs that were not legally saleable, or that they contained an active drug ingredient associated with serious adverse side effects including, *inter alia*, iris color change, sunken eye, styes, hair growth around the eye, complete hair less, and hair growing outside of treatment areas.  Furthermore, like all members of the class, Plaintiff sustained damages from Grande Cosmetics' wrongful conduct and continues to suffer harm. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

55.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.

57.     While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Grande Cosmetics'

**CLASS ACTION COMPLAINT**

wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58.     Grande Cosmetics has acted or refused to act on grounds that apply generally to the Class, thereby making appropriate final injunctive and corresponding declaratory relief with respect to the Class as a whole.

59.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Grande Cosmetics. For example, one court might enjoin Grande Cosmetics from performing the challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

60.     The conduct of Grande Cosmetics is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Grande Cosmetics make declaratory relief with respect to the Class as a whole appropriate. Grande Cosmetics must be stopped from selling an unapproved drug to California consumers in violation of the law. Accordingly, Plaintiff seeks an injunction from Grande Cosmetics' continued sale of the Enhancement Serums and to ensure that Grande Cosmetics complies with the Sherman Law as incorporated into the UCL. Enjoining Grande Cosmetics' unlawful sale of the Enhancement Serums requires one injunction to protect the class as a whole, and would not require a different injunction for each class member.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE "UNLAWFUL" PRONG OF THE UCL**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**

61.     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal.

Bus. & Pro. Code § 17200.

63.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

64.    Grande Cosmetics has violated the unlawful prong by virtue of its violations of the Sherman Food Drug & Cosmetics Laws, California's Health & Safety Code §§ 109875 et seq., selling new drugs without an approved new drug application, and selling misbranded drug and cosmetic products. In addition, Grande Cosmetics has violated the unlawful prong by virtue of its violations of the CLRA and the FAL.

65.    As a result of the conduct described above, Grande Cosmetics has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Grande Cosmetics has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive conduct.

66.    Through its unlawful acts and practices, Grande Cosmetics has improperly obtained money from Plaintiff and the Class.

67.    Consequently, Plaintiff requests that this court cause Grande Cosmetics to restore this money to Plaintiff and all Class members, and to enjoin Grande Cosmetics from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Plaintiff seeks an injunction prohibiting the continued sale of the Enhancement Products which are prescription drugs being sold as cosmetics in California in violation of California's Sherman Law and, accordingly, by the unlawful prong. Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE "FRAUDULENT" PRONG OF THE UCL**
**(CAL. BUS. & PROF. CODE § 17200, et seq.)**

68.    Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

69.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

70.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

71.    Grande Cosmetics has violated the fraudulent prong of § 17200, because its material misrepresentations and omissions regarding the cosmetic status and safety concerns associated with the Enhancement Products and the fact that the Enhancement Products are illegally marketed and sold as a purely cosmetic product when it is actually a drug, have deceived Plaintiff and are highly likely to deceive reasonable members of the consuming public.

72.    Plaintiff and members of the Class have suffered injury in fact, including the loss of money, as a result of Grande Cosmetics' unlawful, unfair, and/or deceptive practices. Specifically, Grande Cosmetics' material misrepresentations and omissions about the safety, legality, and drug ingredients of the Enhancement Products induced reasonable purchasers, including Plaintiff, to buy the product, which they otherwise would not have purchased or would have paid less for.

73.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Grande Cosmetics' business. Grande Cosmetics' wrongful conduct is part of a general practice that is still being perpetuated and repeated throughout the State of California.

74.    Furthermore, as a result of the conduct described above, Grande Cosmetics has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Grande Cosmetics has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading, and deceptive advertising and conduct.

75.    Through its fraudulent acts and practices, Grande Cosmetics has improperly obtained money from Plaintiff and the Class.

76.    Consequently, Plaintiff requests that this court cause Grande Cosmetics to restore this money to Plaintiff and all Class members, and to enjoin Grande Cosmetics from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Plaintiff and the

1   Class may be irreparably harmed and/or denied an effective and complete remedy if such an order
2   is not granted.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE "UNFAIR" PRONG OF THE UCL
### (CAL. BUS. & PROF. CODE § 17200, et seq.)

77.   Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Pro. Code § 17200.

79.   A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

80.   Grande Cosmetics has violated the unfair prong of § 17200 because the acts and practices set forth in the Complaint—including making misrepresentations and material omissions regarding the drug ingredients contained in the Enhancement Serums and the serious safety concerns associated with them—offend established public policy.

81.   The challenged conduct substantially injures consumers, and the harm to consumers greatly outweighs any benefits associated with Grande Cosmetics' actions. Reasonable consumers are not in a position to understand, given Grande Cosmetics' misrepresentations and omissions, the safety concerns posed by the Enhancement Serums, or the fact that they are actually drugs that are illegally marketed and sold.

82.   Through its unfair acts and practices, Grande Cosmetics has improperly obtained money from Plaintiff and the Class.

83.   Consequently, Plaintiff requests that this court cause Grande Cosmetics to restore this money to Plaintiff and all Class members, and to enjoin Grande Cosmetics from continuing to violate the UCL as discussed herein and/or from violating the UCL in the future. Otherwise, Plaintiff

and the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE FALSE ADVERTSING LAW
### (CAL. BUS. & PROF CODE §§ 17500, *et seq.*)

84.   Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85.   California's Business and Professions Code § 17500, *et seq.* prohibits unfair, deceptive, untrue, or misleading advertising. When the seller has a duty to disclose material facts about a product, the sale of the product to consumers without disclosure of such material facts violates the FAL.

86.   Grande Cosmetics markets and sells the Enhancement Serums as if it were a purely cosmetic product free of significant safety concerns, when in fact, the reverse is true. Specifically, Grande Cosmetics materially misrepresents and misleads consumers about the fact that the Enhancement Serums are drugs, and the fact that they pose serious health risks, and omits from its marketing materials the fact that the Enhancement Serums are misbranded and sold illegally.

87.   Through its false advertising scheme, Grande Cosmetics has improperly obtained money from Plaintiff and the Class.

88.   Consequently, Plaintiff requests that this court cause Grande Cosmetics to restore this money to Plaintiff and all Class members, and to enjoin Grande Cosmetics from continuing to violate the FAL as discussed herein and/or from violating the FAL in the future. Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

89.   Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.    At all relevant times, Plaintiff was a "consumer" as defined by Cal. Civ. Code § 1761(d).

91.    At all relevant times, the Enhancement Products constituted "goods" as defined by Cal. Civ. Code § 1761(a)

92.    At all relevant times, Defendant constituted a "person" as defined by Cal. Civ. Code § 1761(c).

93.    At all relevant times, Plaintiff and each of the class member's purchases of Defendant's Products constituted a "transaction" as defined by Cal. Civ. Code § 1761(e).

94.    Cal. Civ. Code § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."

95.    As described herein, Grande Cosmetics violated the CLRA by marketing and selling misbranded drug products, which required government approval prior to sale, but which lacked such approval. The sale of each unit of the Enhancement Serums was a misrepresentation to consumers that the product was recognized as safe by the FDA and the California Department of Public Health, when it was not.

96.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…." Furthermore, Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

97.    Grande Cosmetics violated these provisions of the CLRA by marketing and selling misbranded drug and cosmetic products that posed serious health and safety concerns. The sale of each Enhancement Product misrepresented that the product was free of undisclosed safety concerns. In addition, each Enhancement Serum sale misrepresented that the product is not a drug, has been determined to be safe, and is otherwise legally offered for sale.

98.    The CLRA (including §§ 1770(a) (2), (5), (7)) supports claims for omissions of material fact that Grande Cosmetics was obligated to disclose. In this case, Grande Cosmetics was

obligated, but failed to disclose the known safety concerns associated with the isopropyl cloprostenate contained in the Enhancement Serums, the fact that the Enhancement Serums are drugs, and the illegality of their sales.

99.    Plaintiff relied on Grande Cosmetics' false and misleading omissions and representations about the safety and legal status of the Enhancement Serums in deciding to buy GrandeLASH-MD. Plaintiff would not have purchased GrandeLASH-MD absent Grande Cosmetics' unlawful conduct.

100.    Plaintiff, on behalf of herself and the proposed class, seeks an order enjoining Defendant's unfair or deceptive acts or practices described herein, equitable relief, an award of attorneys' fees, and costs under Cal. Civ. Code § 1780(e).

101.    Plaintiff's counsel sent a CLRA letter on behalf of the putative class members like Plaintiff on December 2, 2021, which Defendant received on December 6, 2021. The CLRA 30-day notice period expired on January 5, 2022. Accordingly, Plaintiff also seeks damages, punitive damages, for Defendant's knowing and willful violation of the law, and fees and costs under the CLRA.

102.    Pursuant to § 1780(d) of the Act, attached hereto as Exhibit 2 is the affidavit showing that this action has been commenced in the proper forum.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant Grande Cosmetics, LLC as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representatives and Plaintiff's counsel be appointed Class Counsel;

B.    A judgment awarding Plaintiff and the Class rescission, restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Grande Cosmetics obtained from Plaintiff and the Class as a result of its unfair and fraudulent business practices described herein;

C.  A judgment awarding damages, including punitive damages, under the CLRA.

D.  An order enjoining Grande Cosmetics from selling the Enhancement Serums in California—unapproved drugs, and from continuing to violate the UCL, FAL, and CLRA as described herein;

E.  A judgment awarding Plaintiff her costs of suit; including reasonable attorneys' fees pursuant to California Civil Code § 1780(d), California Code of Civil Procedure § 1021.5 and as otherwise permitted by statute; and pre and post judgment interest; and

F.  Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated:  January 6, 2022                     Respectfully submitted,


By:___*/s/ Annick M. Persinger*_____
        Annick M. Persinger

Annick M. Persinger
TYCKO & ZAVAREEI LLP

*Attorneys for Plaintiff*

# EXHIBIT 1

You are viewing an archived web page, collected at the request of U.S Food and Drug Administration    hide
using Archive-It. This page was captured on 10:09:14 Jan 11, 2017, and is part of the FDA.gov
collection. The information on this web page may be out of date. See All versions of this archived page.
Found 0 archived media items out of 0 total on this page.



## Archived Content

The content on this page is provided for reference purposes only. This content has not
been altered or updated since it was archived.

Search Archive

Home Inspections, Compliance, Enforcement, and Criminal Investigations Compliance Actions and Activities Warning
Letters 2011

## Inspections, Compliance, Enforcement, and Criminal Investigations

## Lifetech Resources LLC 4/18/11



**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
Los Angeles District
Pacific Region
19701 Fairchild
Irvine, CA 92612-2506
Telephone: 949-608-2900
FAX: 949-608-4415

**WARNING LETTER**

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

W/L 32-11

April 18, 2011

Mr. Richard Carieri
Lifetech Resources LLC
9540 Cozycroft Ave
Chatsworth, CA 91311

Dear Mr. Carieri:

This letter is in reference to your firm's involvement in the manufacturing, distribution, and promotion of
RapidLash Eyelash Renewal Serum ("RapidLash"), NeuLash Active Eyelash Technology ("NeuLash"), and
NeuveauBrow Active Eyebrow Technology ("NeuveauBrow"). As presently formulated, labeled and promoted,
these products violate provisions of the Federal Food, Drug, and Cosmetic Act (the Act). As described below,
"RapidLash", "NeuLash", and "NeuveauBrow" are unapproved new drugs in violation of sections 505(a) and
301(d) of the Act (21 U.S.C. §§ 355(a) and 331(d)) and misbranded drugs in violation of section 502 (21 U.S.C.
§§ 352) of the Act. Furthermore, because "RapidLash", "NeuLash", and "NeuveauBrow" are intended to be
applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance, they
also are cosmetics within the meaning of section 201(i) of the Act (21 U.S.C. § 321(i)) and misbranded under
section 602(a) of the Act (21 U.S.C. § 362(a)). In addition, "RapidLash" and "NeuLash" are adulterated
cosmetics under section 601(a) of the Act (21 U.S.C. § 361(a)).

**Unapproved New Drug and Misbranded Drug**

"RapidLash", "NeuLash", and "NeuveauBrow" are promoted for growth of eyelashes and eyebrows in labeling on various websites including http://www.RapidLash.com[1], http://www.NeuLash.com[2], and http://www.NeaveauBrow.com[3] and in promotional literature about the products. Examples of these claims include, but are not limited to, the following:

RapidLash

- (website) "After 84 days of daily use, RapidLash induced a significant increase in the length of eyelashes"
- (website video) "This formula is designed to lengthen and thicken lashes in 30 days. Your lashes and your eyebrows grow thicker and faster."
- (website video) "RapidLash, which is this eyeliner type stuff that you paint on your eyes, and your lashes grow. . ."
- (website video) "There are brands like RapidLash that really grow your lashes."
- (website) "When I reached about age 50, my eyelashes had seemed to shrink to nothing and wearing mascara was senseless. Then along came Rapid Lash! I began to notice a change with my eyelashes in less then 4 weeks of using it. In 6 weeks, my eyelashes were back to the original length of my younger days."
- (website audio) "…I have been using RapidLash for probably going on three months now, and let me tell you this stuff is awesome. . . .My eyelashes have grown . . . ."
- (promotional pamphlet) "I went to the salon and they asked me if I wanted my eyebrows trimmed. I never had any eyebrows before RapidLash"

NeuLash

- (website) "I lost my eyelashes during chemotherapy and had none for three years. When I heard about products to help lengthen and thicken lashes, I was skeptical but chose to try neuLash because of its great customer reviews. . . . After eight weeks, my lashes were curlier, darker, longer, and thicker than ever before."
- (magazine image from website) "NeuLash®, an active eyelash technology strengthens and lengthens eyelashes in as little as two weeks."
- (website) "Helps promote cell regeneration"

NeaveauBrow

- (promotional pamphlet) "Helps accelerate the length of the hair shaft, while promoting fuller, thicker, and healthier looking brows."
- (promotional pamphlet) "neuveauBrow [sic] features our exclusive **(b)(4)** which effectively renews and regenerates skin cells. . .."
- (website) "It took about 6 weeks for me too see anything, but, lo and behold, I looked in the mirror one morning and saw MANY new hairs filling in my brows. I could not believe it."
- (website) "It's easy to apply and you do get growth where you put it."

Based on the labeling and promotional materials described above, "RapidLash", "NeuLash", and "NeuveauBrow" are drugs as defined by sections 201(g)(1)(C) of the Act (21 U.S.C. §§ 321(g)(l)(B) and (C)) because they are articles intended to affect the structure or function of the body by inducing eyelash and eyebrow growth.

"RapidLash", "NeuLash", and "NeuveauBrow" as currently formulated, contain the active ingredient isopropyl cloprostenate. Isopropyl cloprostenate is a synthetic prostaglandin analog in the same class of compounds as the active ingredients in FDA-approved drugs indicated to lower intraocular pressure in glaucoma patients (e.g., **(b) (6)** (bimatoprost ophthalmic solution), **(b)(6)** (travoprost ophthalmic solution) and to treat hypotrichosis[1] of the eyelashes (e.g., **(b)(6)** (bimatoprost ophthalmic solution)). Prostaglandin analogs are well known to have an effect on the structure or function of the body.[2] The presence of the prostaglandin analog, isopropyl cloprostenate, along with appearance claims such as "enhance the appearance of your lashes and brows," "fuller healthier-looking lashes," and "fuller healthier-looking brows" indicate that your products are intended to affect the structure or function of the body.[3] Accordingly, "RapidLash", "NeuLash", and "NeuveauBrow" are drugs as defined by section 201(g)(1)(C) of the Act (21 U.S.C. § 321(g)(l)(C)).

Moreover, "RapidLash", "NeuLash", and "NeuveauBrow" are new drugs, as defined by section 201(p) of the Act, (21 U.S.C. § 321(p)), because they are not generally recognized as safe and effective under the conditions prescribed, recommended, or suggested in its labeling. Under sections 301(d) and 505(a) of the Act (21 U.S.C. §§ 331(d) and 355(a)), a new drug may not be introduced or delivered for introduction into interstate commerce unless an FDA-approved application is in effect for the drug. Based on our information, you do not have an FDA-approved application on file for these drug products.

"RapidLash" and "NeuLash" are prescription drugs as defined in section 503(b)(1)(A) of the Act (21 U.S.C. § 353(b)(1)(A)), because, in light of their toxicity or other potentiality for harmful effect, the method of their use, or the collateral measures necessary to their use, they are not safe for use except under the supervision of a practitioner licensed by law to administer them. Specifically, isopropyl cloprostenate, the active ingredient in "RapidLash", and "NeuLash" may lower intraocular pressure. Patients using these products concurrently with

intraocular pressure lowering medication should be closely monitored for changes to their intraocular pressure. Other potential adverse events associated with prostaglandin analogs for ophthalmic use include ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with glaucoma therapy. In addition, prostaglandin analogs for ophthalmic use are currently classified as Pregnancy Class C.[4]

According to section 502(f)(1) of the Act (21 U.S.C. § 352(f)(1)), a drug is misbranded if, among other things, it fails to bear adequate directions for its intended uses. "Adequate directions for use" means directions under which a layman can use a drug safely and for the purposes for which it is intended (21 C.F.R. § 201.5). Prescription drugs can only be used safely at the direction, and under the supervision of, a licensed practitioner. Therefore, for prescription drugs, it is not possible to write adequate directions for use by a layperson. FDA-approved prescription drugs that bear their FDA-approved labeling are exempt from the requirement that they bear adequate directions for use by a layperson (21 C.F.R. §§ 201.100(c)(2) and 201.115). Because there is no FDA-approved application for "RapidLash" and "NeuLash", their labeling fails to bear adequate directions for the intended uses, causing them to be misbranded under section 502(f)(1) of the Act (21 U.S.C. § 352(f)(1)).

Additionally, under section 502(a) of the Act, a drug is misbranded if its labeling is false or misleading in any particular. Section 201(n) of the Act (21 U.S.C. § 321(n)) provides that, in determining whether an article's labeling or advertising "is misleading, there shall be taken into account (among other things) not only representations made or suggested . . . but also the extent to which the labeling or advertising fails to reveal facts material in light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or under such conditions of use as are customary or usual."

"RapidLash", "NeuLash", and "NeuveauBrow" are misbranded under section 502(a) because their labeling makes misleading statements regarding the product's safety and also fails to reveal material facts with respect to consequences that may result from the use of the product. Specifically, your product literature for "RapidLash" states, "Passed the Safety Status in the US and EU," your product literature for "NeuLash" states, "Safety Status in the US and EU – Passed," and your product literature for "NeaveauBrow" states "Safety Status in the US – Passed." However, as stated above, your products have not been approved by FDA based on safety and efficacy. In fact, FDA has determined that drug products in the same class as the active ingredient in "RapidLash", "NeuLash", and "NeuveauBrow" cannot be used safely without the direction, or under the supervision of, a licensed medical practitioner. Despite making a claim regarding safety, your products fail to include warnings about the possible adverse affects associated with the active ingredients used in your products. Thus, you have failed to reveal consequences that may result from the use of these products as described in the labeling, in violation of section 201(n) of the Act.

The introduction or delivery for introduction into interstate commerce of a misbranded product violates section 301(a) of the Act (21 U.S.C. § 331(a)).

**Adulterated and Misbranded Cosmetic**

Even if "RapidLash", "NeuLash", and "NeuveauBrow" were cosmetics within the meaning of section 201(i) of the Act (21 U.S.C. § 321(i)), they could not be lawfully marketed because they would be misbranded under section 602(a) of the Act (21 U.S.C. § 362(a)) and, in the case of "NeuLash" and "NeuveauBrow" adulterated under section 601(a) of the Act (21 U.S.C. § 361(a)).

Under section 602(a) of the Act (21 U.S.C. § 362(a)), a cosmetic is misbranded if its labeling is false or misleading in any particular. "RapidLash", "NeuLash", and "NeuveauBrow" are misbranded cosmetics under section 602(a) because, as discussed above, their labeling is misleading in that it fails to reveal facts material with respect to consequences that may result from the use of the products under the conditions of use prescribed in the labeling.

In addition, under section 601(a) of the Act (21 U.S.C. § 361(a)), a cosmetic is adulterated if it bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or, under such conditions of use as are customary or usual. "RapidLash" and "NeuLash" are adulterated cosmetics under section 601(a) because they bear or contain a deleterious substance that may render them injurious to users under the conditions of use prescribed in their labeling. Specifically, "RapidLash" and "NeuLash" contain isopropyl cloprostenate which, under the conditions of use prescribed in the labeling, may cause the following injuries: ocular irritation, hyperemia, iris color change, macular edema, ocular inflammation, and interference with intraocular pressure reduction therapy. In addition, as mentioned above, prostaglandin analogs for ophthalmic use are currently classified as Pregnancy Class C; women of childbearing age are considered at risk for injury.

It is a violation of section 301(a) of the Act (21 U.S.C. § 331(a)) to introduce or deliver for introduction into interstate commerce any cosmetic that is adulterated or misbranded.

* * *

The issues and violations cited in this letter are not intended to be an all-inclusive statement of violations that exist in connection with your product. You are responsible for investigating and determining the causes of the

violations identified above and for preventing their recurrence or the occurrence of other violations.  Furthermore, please advise what actions you will take to address product that you have already distributed.  It is your responsibility to assure that your firm complies with all requirements of federal law and FDA regulations.

You should take prompt action to correct the violations cited in this letter.  Failure to promptly correct these violations may result in legal action without further notice, including, without limitation, seizure and injunction.  Other federal agencies may take this Warning Letter into account when considering the award of contracts.

Within fifteen working days of receipt of this letter, please notify this office in writing of the specific steps that you have taken to correct violations.  Include an explanation of each step being taken to prevent the recurrence of violations, as well as copies of related documentation.  If you cannot complete corrective action within fifteen working days, state the reason for the delay and the time within which you will complete the correction.

Please send your response to:

> Attention: Blake Bevill
> Director Compliance Branch
> U.S. Food and Drug Administration
> 19701 Fairchild
> Irvine, CA 92612

If you have any questions, please contact Dr. Raymond W. Brullo, Compliance Officer, at 949.608.2918 or raymond.brullo@fda.hhs.gov[4].

A description of the new drug approval process can be found on FDA's internet website at http://www.fda.gov/cder/regulatory/applications/default.htm[5].  Any questions you may have regarding this process should be directed to the Food and Drug Administration, Division of Drug Information (HFD 240), Center for Drug Evaluation and Research, 10001 New Hampshire Ave., Silver Spring, MD 20903-1707.

Sincerely,

/s/

Alonza E. Cruse
District Director
Los Angeles District

[1] Hypotrichosis is another name for having inadequate or not enough eyelashes.

[2] For example, the FDA-approved labeling for **(b)(6)** notes that the products may change eyelashes, including "increased length, thickness and number of lashes.

[3] The intended use of a product may be determined by, amoug other things, its labeling, advertising, and the circumstances surrounding its distribution, 21 C.F.R. § 201.128.

[4] Drugs are classified as Pregnancy Category C when either (1) animal reproduction studies have shown an adverse effect on the fetus and there are no adequate and well controlled studies in humans, but potential benefits may warrant use of the drug in pregnant women despite potential risks; or (2) there are no animal reproduction studies and no adequate and well controlled studies in humans, 21 C.F.R § 201.57.

Page Last Updated: 04/20/2011
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.
Language Assistance Available: Español | 繁體中文 | Tiếng Việt | 한국어 | Tagalog | Русский | العربية | Kreyòl Ayisyen | Français | Polski | Português | Italiano | Deutsch | 日本語 | فارسی | English

Accessibility Contact FDA Careers FDA Basics FOIA No FEAR Act Site Map Nondiscrimination Website Policies



U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Contact FDA



For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education

 U.S. Department of **Health & Human Services**

## Links on this page:

1. http://www.rapidlash.com/
2. http://www.neulash.com/
3. http://www.neaveaubrow.com/
4. http://20170111100914/mailto:raymond.brullo@fda.hhs.gov
5. http://www.fda.gov/cder/regulatory/applications/default.htm

# EXHIBIT 2

**CONSUMER LEGAL REMEDIES ACT VENUE DECLARATION**

I, Alexandra Mandel, declare as follows:

1. I am a named plaintiff in this litigation.

2. I have personal knowledge of the matters set forth below except to those matters stated herein are based on information and belief, which matters I believe to be true.

3. If called as a witness I could and would competently testify to matters included herein.

4. I purchased GrandeLASH-MD as described in the Complaint.

5. I am informed and believe that venue is proper in this Court under California Civil Code Section 1780(d) based on the fact that I purchased GrandeLASH-MD multiple times in this county based on the advertising for the product, including the omissions in the labeling and advertising of GrandeLASH-MD.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on January 5, 2022, in Oakland, California.

By _Alexandra Mandel_____
DocuSigned by:
0AEF437F7B37436...

Alexandra Mandel