1   Annick M. Persinger (CA Bar No. 272996)
    *apersinger@tzlegal.com*
2   **TYCKO & ZAVAREEI LLP**
    1970 Broadway, Suite 1070
3   Oakland, California 94612
    Telephone: (510) 254-6808
4
    Allison W. Parr (*pro hac vice*)
5   *aparr@tzlegal.com*
    **TYCKO & ZAVAREEI LLP**
6   2000 Pennsylvania Avenue NW, Suite 1010
    Washington, D.C. 20006
7   Telephone: (202) 973-0900
8   Scott Edelsberg (CA Bar No. 330990)
    *scott@edelsberglaw.com*
9   **EDELSBERG LAW, P.A.**
    1925 Century Park East, #1700
10  Los Angeles, California 90067
    Telephone: (310) 438-5355
11
    *Attorneys for Plaintiff*

12

13

14                **UNITED STATES DISTRICT COURT**

15                **NORTHERN DISTRICT OF CALIFORNIA**

16  ALEXANDRA MANDEL. *on behalf of herself and*         Case No. 3:22-cv-00071-JD
    *all others similarly situated*,
17                                                        Hon. James Donato
18                          Plaintiff,
                                                          **NOTICE OF MOTION AND MOTION
19          v.                                            FOR PRELIMINARY APPROVAL OF
                                                          CLASS ACTION SETTLEMENT;
    GRANDE COSMETICS, LLC,                                MEMORANDUM IN SUPPORT**
20
                            Defendant.
21                                                        **Date**: June 1, 2023
                                                          **Time**: 10:00 a.m. Pacific Time
22                                                        **Courtroom**: Courtroom 11, 19th Floor
23                                                        ***REDACTED***
24

25

26

27

28

1    **PLEASE TAKE NOTICE** that on June 1, 2023 at 10:00 a.m., or at another time agreeable

2    to the Court, Plaintiff Alexandra Mandel on behalf of herself and all others similarly situated will

3    respectfully move for an order to preliminarily approve the Class Action Settlement reached in this

4    case.

5    This Motion is unopposed by Defendant Grande Cosmetics, LLC ("Grande"). While Grande

6    does not oppose Plaintiff's request for preliminary approval, Grande disagrees with Plaintiff's views

7    about the strength of her case, as well as Plaintiff's views regarding the injunctive relief as described

8    in the Memorandum. Grande denies the allegations asserted in the Action and denies liability or

9    wrongdoing of any kind, because Grande claims the Enhancement Serums are safe cosmetic products

10   with a proven track record of overwhelmingly positive consumer satisfaction. Grande states that

11   comprehensive product safety testing substantiates the safety of the Enhancement Serums while no

12   scientific study has ever found that the Enhancement Serums cause any of the serious adverse events

13   alleged in Plaintiff's lawsuit. Grande contends that it has always marketed the Enhancement Serums

14   as cosmetics, that the U.S. Food and Drug Administration ("FDA") is the sole administrative body

15   authorized to determine the regulatory status of products subject to its jurisdiction, and the FDA has

16   never alleged or found the Enhancement Serums are adulterated, misbranded or unapproved drugs.

17

18   DATED: April 21, 2023                              Respectfully Submitted,

19                                                      /s/ Annick M. Persinger

20                                                      Annick M. Persinger
                                                        apersinger@tzlegal.com
21                                                      **TYCKO & ZAVAREEI LLP**
                                                        1970 Broadway, Suite 1070
22                                                      Oakland, California 94612
                                                        Telephone: (510) 254-6808
23
                                                        Allison W. Parr (*pro hac vice*)
24                                                      aparr@tzlegal.com
                                                        **TYCKO & ZAVAREEI LLP**
25                                                      2000 Pennsylvania Avenue NW, Suite 1010
                                                        Washington, D.C. 20006
26                                                      Telephone: (202) 973-0900

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scott Edelsberg (CA Bar No. 330990)
scott@edelsberglaw.com
**EDELSBERG LAW, P.A.**
1925 Century Park East, #1700
Los Angeles, California 90067
Telephone: (310) 438-5355

*Attorneys for Plaintiff*

Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Allison W. Parr (*pro hac vice*)
*aparr@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900

Scott Edelsberg (CA Bar No. 330990)
*scott@edelsberglaw.com*
**EDELSBERG LAW, P.A.**
1925 Century Park East, #1700
Los Angeles, California 90067
Telephone: (310) 438-5355

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA MANDEL. *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>GRANDE COSMETICS, LLC,<br><br>Defendant. | Case No. 3:22-cv-00071-JD<br><br>Hon. James Donato<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date**: June 1, 2023<br>**Time**: 10:00 a.m. Pacific Time<br>**Courtroom**: Courtroom 11, 19th Floor |

1

## TABLE OF CONTENTS

2   I.     INTRODUCTION.................................................................................................1

3   II.    PROCEDURAL BACKGROUND AND HISTORY OF NEGOTIATIONS.....................2

4   III.   INFORMATION ABOUT THE SETTLEMENT .................................................3

5       a.  The Proposed Settlement Class .................................................................3

6       b.  The Claims Released .................................................................................4

7       c.  The Class Recovery ..................................................................................5

8       d.  Other Cases ..............................................................................................8

9       e.  The Proposed Allocation Plan .................................................................9

10      f.  The Anticipated Claims Rate ................................................................ 11

11      g.  Reversions.............................................................................................. 11

12  IV.   SETTLEMENT ADMINISTRATION ....................................................... 11

13      a.  The Selection of the Administrator ....................................................... 11

14      b.  Administrative Costs and Protection of Class Member Data ................ 12

15  V.     THE NOTICE PLAN ........................................................................... 13

16  VI.    OPT-OUTS ....................................................................................... 14

17  VII.   OBJECTIONS.................................................................................... 15

18  VIII.  ATTORNEYS' FEES AND COSTS ...................................................... 15

19  IX.    SERVICE AWARD............................................................................. 16

20  X.     CY PRES .......................................................................................... 16

21  XI.    TIMELINE ........................................................................................ 17

22  XII.   CAFA .............................................................................................. 17

23  XIII.  COMPARABLE OUTCOMES.............................................................. 17

24  XIV.  LEGAL STANDARD FOR PRELIMINARY APPROVAL ........................ 20

25  XV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.................... 21

26  XVI.  ADEQUATE REPRESENTATION......................................................... 23

27  XVII. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE......................... 24

28  XVIII. CONCLUSION ................................................................................. 25

i

# TABLE OF AUTHORITIES

CASES

*Aceves v. Autozone Inc.*
    2016 WL 11755166 (C.D. Cal. Nov. 18, 2016) ........................................................................ 6

*Adams v. Inter-Con Sec. Sys., Inc.*
    2007 WL 3225466 (N.D. Cal. Oct. 30, 2007) ......................................................................... 22

*Ahdoot v. Babolat v. N. Am.*
    2014 WL 12586114 (C.D. Cal. Oct. 7, 2014) .......................................................................... 6

*Allergan v. Athena Cosmetics, Inc.*
    738 F.3d 1350 (Fed. Cir. 2013) ............................................................................................... 8

*Avina v. Marriott Vacations Worldwide Corp.*
    2019 WL 8163642 (C.D. Cal. Oct. 25, 2019) ........................................................................ 22

*Banks v. Nissan N. Am., Inc.*
    2015 WL 7710297 (N.D. Cal. Nov. 30, 2015) ........................................................................ 21

*Bluetooth Headset Products Liability Litigation*
    654 F.3d 935 (9th Cir. 2011) .................................................................................................. 22

*Bostick v. Herbalife Int'l of Am., Inc.*
    2015 WL 12731932 (C.D. Cal. May 14, 2015) ....................................................................... 11

*Briseno v. Henderson*
    998 F.3d 1014 (9th Cir. 2021) ................................................................................................ 22

*Broomfield v. Craft Brew Alliance, Inc.*
    2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......................................................................... 11

*Campbell v. Facebook, Inc.*
    951 F.3d 1106 (9th Cir. 2020) .............................................................................................. 7, 20

*Celano v. Marriott Int'l Inc.*
    242 F.R.D. 544 (N.D. Cal. 2007) ........................................................................................... 24

*Cho v. Seagate Tech. Holdings Inc.*
    177 Cal.App.4th 734 (2009) .................................................................................................... 6

*Churchill Vill., L.L.C. v. Gen. Elec.*
    361 F.3d 566 (9th Cir. 2004) .................................................................................................. 21

*Ebarle v. Lifelock, Inc.*
    2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) ........................................................................ 6

*Free Range Content, Inc. v. Google, LLC*
    2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ....................................................................... 20

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 21

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) .................................................................................... 24

*Hillman v. Lexicon Consulting, Inc.*
    2017 WL 10433869 (C.D. Cal. Apr. 27, 2019) ......................................................... 23

*In re Facebook Biometric Info. Privacy Litig.*
    522 F.Supp.3d 617 (N.D. Cal. 2021) ........................................................................ 10

*In re Hyundai & Kia Fuel Econ. Litig.*
    926 F.3d 539 (9th Cir. 2019) .................................................................................... 22

*In re Immune Response Sec. Litig.*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................................................................... 22

*In re Linkedin User Privacy Litig.*
    309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................... 6

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ...............................................................................20, 23

*In re Online DVDRental Antitrust Litig.*
    779 F.3d 934 (9th Cir. 2015) .................................................................................... 13

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995) ...................................................................................... 23

*In re Roundup Prods. Liab. Litig.*
    2023 WL 2723334 (N.D. Cal. Mar. 31, 2023) ........................................................... 6

*In re Steroid Hormone Prod. Cases*
    181 Cal.App.4th 145 (Cal. Ct. App. 2010) ................................................................. 6

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions ACT (FACTA) Litig.*
    295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) .................................................................. 7

*Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) ............................................ 14

*Lash Boost Cases*
    No. CJC-18-004981 (Cal. Super. Ct. S.F. Cty.) ...................................................... 17

*Littlejohn v. Copland*
    819 F. App'x 491 (9th Cir. 2020) ............................................................................... 7

*Makaeff v. Trump Univ., LLC*
    309 F.R.D. 631 (S.D. Cal. 2015) ................................................................................ 6

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*
    2021 WL 1788447 (N.D. Cal. May 5, 2021) ........................................................... 23

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 22

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*
    48 F.4th 1040 (9th Cir. 2022) .........................................................................3, 8, 19

iii

*Nixon v. Grande Cosmetics, LLC*
    No. 1:22-cv-06639-RMB-MJS (D.N.J. Nov. 16, 2022) ...................................................... 8, 9

*Nixon v. Grande Cosmetics, LLC*
    No. 1:23-cv-01199-RMB-AMD (D.N.J. Mar. 1, 2023) ......................................................... 9

*Norton v. LVNV Funding, LLC*
    2021 WL 3129568 (N.D. Cal. July 23, 2021) .................................................................... 23

*Perez v. Nidek*
    711 F.3d 1109 (9th Cir. 2013) ........................................................................................... 8

*Perks v. Activehours, Inc.*
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................................................... 21

*Sadowska v. Volkswagen Grp. of Am., Inc.*
    2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .................................................................. 23

*Schneider v. Chipotle Mexican Grill, Inc.*
    336 F.R.D. 588 (N.D. Cal. 2020) ..................................................................................... 11

*Taylor v. Shutterfly, Inc.*
    2021 WL 58102946 (N.D. Cal. Dec. 7, 2021) .................................................................... 7

*Touhey v. United States*
    2011 WL 3179036 (C.D. Cal. July 25, 2011) ................................................................... 11

*Vedachalam v. Tata Consultancy Servs., Ltd*
    2013 WL 3941319 (N.D. Cal. July 18, 2013) ................................................................... 23

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) ......................................................................................... 16

*Walker v. Life Ins. Co. of the Sw.*
    2021 WL 6618814 (C.D. Cal. June 7, 2021) .................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ......................................................................................................... 24

*Wang v. StubHub, Inc.*
    No. CGC-18-564120, Order Granting P.'s Mot. for Final Approval (Cal. Super. Ct.
    S.F. Cty. Aug. 8, 2022) .................................................................................................... 6

*Wolin v. Jaguar Land Rover N. Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ......................................................................................... 25

*Wong v. Arlo Techs., Inc.*
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .................................................................. 21

*Wyeth v. Levine*
    555 U.S. 555 (2009) ........................................................................................................... 8

**RULES**

FED. R. CIV. P. 23 ....................................................................................................... passim

MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-00071-JD

## I.    INTRODUCTION

Plaintiff Alexandra Mandel ("Plaintiff"), individually and on behalf of the proposed Settlement Class, seeks preliminary approval of a proposed Settlement that resolves claims against Defendant Grande Cosmetics, LLC ("Grande" or "Defendant") for its marketing of GrandeLASH-MD Lash Enhancing Serum, GrandeBROW Brow Enhancing Serum, and GrandeHAIR Enhancement Serum (collectively, the "Enhancement Serums" or the "Products").[1] Plaintiff alleges that Grande fraudulently sold the Products as cosmetics, when they contain a drug ingredient, Isopropyl Cloprostenate ("IC"), which Plaintiff further alleges is associated with serious adverse effects. Plaintiff brought this action to seek injunctive relief and to obtain refunds or other compensation for class members who brought the Products without knowing the risks.

Plaintiff now seeks preliminary approval of a proposed Settlement that achieves her goals in this litigation by providing both monetary compensation and injunctive relief to the Settlement Class.

*First*, the Settlement establishes a Total Settlement Amount of $6,250,000 to provide compensation for a nationwide class of purchasers of the Products. That Amount is comprised of a $5,000,000 Cash Settlement Fund, and a $1,250,000 Credit Settlement Fund available for those who prefer credit. No part of the $6,250,000 Total Settlement Amount will revert to Defendant.

*Second*, the Settlement includes important injunctive relief. Grande has agreed to better highlight the presence of IC in the Products by making the following changes to its marketing: Expanded Warning Statements and New Ingredient Declarations on outer packaging and on a product insert; Expanded Instructions, Expanded Warnings Statements and the New Ingredient Declaration on its Website; and to use the New Ingredient Declaration whenever an ingredient declaration is used. *See* Agreement, at Ex. F. Thus, going forward, potential consumers of the Products will be able to make an informed choice about whether to risk possible adverse effects to obtain the eyelash, hair, and brow enhancing benefits that the Products provide.

---

[1] Unless otherwise specifically defined herein, all capitalized terms shall have the same meanings as those set forth in the parties' Settlement Agreement and Release ("Agreement") and the exhibits thereto, attached as Exhibit 1 to the Persinger Declaration ("Persinger Decl.") submitted herewith.

At the time the Settlement was reached, Settlement Class Counsel was in a position to make an informed decision about the value of Plaintiff's case relative to the benefits offered by the Settlement. In that regard, the relief for Settlement Class Members was secured after Plaintiff defeated Defendant's Motion to Dismiss, after four months of discovery, and while Plaintiff was preparing to move for class certification. The Settlement is also the result of extensive arm's-length negotiations by experienced and informed counsel, including one day-long mediation session with the aid of Hon. Jay C. Gandhi (Ret.), and weeks of continued negotiations thereafter.

Accordingly, Plaintiff respectfully submits that the Settlement is fair, adequate, and reasonable, and that it warrants preliminary approval. Plaintiff requests that the Court:

(1)    preliminarily approve the proposed Settlement;

(2)    provisionally certify the nationwide Settlement Class for settlement purposes only;

(3)    appoint Plaintiff as the Class Representative for settlement purposes only;

(4)    appoint Tycko & Zavareei LLP, and Edelsberg Law, P.A. as Class Counsel for settlement purposes only;

(5)    approve the form, manner and content of the proposed notice and order that it be distributed to the Settlement Class pursuant to the proposed Notice Plan;

(6)    set deadlines for filing claims, objections and exclusions to the Settlement;

(7)    schedule a Final Approval Hearing; and

(8)    stay all proceedings until the Court renders a final decision on approval of the Settlement.

## II.    PROCEDURAL BACKGROUND AND HISTORY OF NEGOTIATIONS

To challenge Grande's fraudulent sale of the Enhancement Serums as cosmetics when they are, in fact, unapproved new drugs, on January 6, 2022, Plaintiff initiated a class action lawsuit alleging Grande violated the California Sherman Law, Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act by selling the Enhancement Serums to California consumers. Compl., ECF No. 1. Plaintiff alleged that she purchased the Enhancement Serums believing that they were safe cosmetics, and that Grande deceived her and other consumers by omitting the truth—that the Enhancement Serums as formulated with IC, which is known to be associated with adverse side effects, were unapproved new drugs under the Sherman Law. Based on her well-plead allegations, on July 18, 2022, Mandel defeated Grande's motion to dismiss in its entirety.

Discovery commenced, and the parties exchanged extensive discovery, including multiple rounds of written discovery and document productions. *See* Persinger Decl. ¶¶ 11-15. Settlement Class Counsel reviewed 7,230 pages of documents to prepare to take depositions and to move for class certification. *Id.* Written discovery provided by Grande included important information from Grande including the total number of units sold, Grande's total nationwide and California sales, and the average purchase prices of the Products. *Id.* At the same time Settlement Class Counsel reviewed information produced by Grande, Settlement Class Counsel also began preparing began preparing Plaintiff's Motion for Class Certification. *Id.*

Plaintiff also responded to Defendant's written discovery, searched her own records, and even agreed to produce her confidential medical records to avoid a discovery dispute. *Id.* Counsel for the parties conferred over discovery disputes with several letters and phone conferences. *Id.*

While the parties conducted fact discovery, on September 13, 2022, the Ninth Circuit issued *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040 (9th Cir. 2022) that Grande argues establishes that Plaintiff's claims are impliedly preempted. As a result, Grande intended to move for reconsideration of the Court's decision to deny Grande's Motion to Dismiss. Persinger Decl. ¶ 16.

As Plaintiff prepared to move for class certification, and Defendant prepared to move for reconsideration, the parties agreed to mediate with Hon. Jay C. Gandhi (Ret.) who is an experienced mediator who also mediated a similar case involving Lash Boost that, like the Products, contains IC. *See id.* at ¶¶ 17-20. The parties met for a full day mediation on December 9, 2022. *Id.* Thereafter, the parties continued to regularly communicate to negotiate both monetary and injunctive relief until the parties reached an agreement in principle on January 13, 2023. *Id.* Through vigorous negotiations, a free exchange of information, and the guidance of Judge Gandhi, the parties reached a fair agreement.

## III.    INFORMATION ABOUT THE SETTLEMENT

### a.  The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Class for settlement purposes only:

All current and former consumers in the United States or its territories who purchased

3

GrandeLASH-MD, GrandeBROW, or GrandeHAIR for personal, family, or household purposes between January 1, 2018 and the date of the entry of an order granting preliminary approval to the Settlement Agreement excluding (a) any individuals who have pending litigation against Grande; (b) any Settlement Class Members who file a timely request for exclusion; (c) any officers, directors, or employees, or immediate family members of the officers, directors, or employees, of Defendant or any entity in which Defendant has a controlling interest; (d) any legal counsel or employee of legal counsel for Defendant; (e) any federal, state, or local government entities; and (f) any judicial officers presiding over the Action and the members of their immediate family and judicial staff.

*See* Agreement at ¶ 1.35.

This Settlement Class differs from the class proposed in the operative complaint in that the Settlement Class includes all current and former consumers in the United States who purchased any of the Enhancement Serums, whereas the proposed class in the operative complaint included only California consumers who purchased any of the Enhancement Serums. *See* Procedural Guidance for Class Action Settlements (the "Settlement Guidelines), ¶ 1 (a). This difference is appropriate because it means that the Settlement benefits more consumers than judgment on the claims in the operative complaint would have, and because the release contemplated by the Settlement releases nationwide claims. Persinger Decl. ¶ 22. Having a settlement benefit a nationwide class is also efficient as it resolves all nationwide claims at once. *Id.* No class has previously been certified in this action. *Id.*

**b. The Claims Released**

The Settlement Provides for the following Release:

Effective immediately upon the Settlement Date, Plaintiff and each Settlement Class Member who does not timely opt-out of the Settlement shall fully, completely and forever release and discharge the Released Defendant Parties from any and all past, present, or future claims, liabilities, actions, allegations, complaints, demands, obligations, causes of action, suits, rights, damages, debts, guarantees, orders, controversies, penalties, promises, covenants, losses, costs, expenses, or attorneys' fees of every kind, nature and source whether legal, equitable or otherwise, whether based on contract (express, implied, or otherwise), tort, common law, any state or federal law, statute or regulation or any other theory of recovery, whether brought under the laws of any state, federal or other government, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, suspected or unsuspected, and whether seeking compensatory, exemplary, punitive, restitution, disgorgement, statutory, or injunctive relief or damages of any kind or multiplier thereof, that Plaintiff and each Settlement Class Member now have or may hereafter accrue or otherwise be acquired, arising out of or related to the subject matter of the Action involving the Enhancement Serums, including, but not limited to, the sale, purchase, marketing, advertising, distribution, design, formulation, manufacture, and the labelling of the Product during the Settlement Class Period ("Released Plaintiff's Claims").

*See* Agreement at ¶ 3.1.

1    Specifically excluded from the release are individual personal injury or disease claims, including

2    existing claims, as well as latent or unknown individual personal injury or disease claims, held by

3    Settlement Class Members. *See id.* at ¶ 3.2.

4    Settlement Class Counsel believes that the release is appropriately tailored, in that it is limited

5    from claims arising from the factual predicate to the claims asserted in Plaintiff's complaint and is

6    therefore appropriate consideration in exchange for the substantial class relief provided by the

7    Settlement. Persinger Decl. ¶ 24. The only difference between this release and the release of claims

8    contemplated by the operative complaint is that this release is by a nationwide class, instead of the

9    putative class of California purchasers contemplated by the operative complaint. Persinger Decl. ¶ 25;

10    Settlement Guidelines ¶ 1(b). This difference is appropriate because the Settlement benefits a

11    nationwide class of Settlement Class Members. Persinger Decl. ¶ 25.

12        **c. The Class Recovery**

13    The Total Settlement Amount of $6,250,000, which is comprised of a $5,000,000 Cash

14    Settlement Fund and a $1,250,000 Credit Settlement Fund, is an excellent recovery for the Settlement

15    Class. *See* Agreement at ¶¶ 2.1, 2.3. In addition, the Settlement includes priceless injunctive relief,

16    namely Grande's website, packaging and Enhancement Serum inserts will more prominently disclose

17    the presence of IC in the products while providing an expanded warning statement and instructions

18    for use. *Id.* at ¶ 2.4; *id.* at Ex. F. Grande has agreed to provide expanded cautionary instructions for

19    use and has agreed to make certain changes in how it advertises the Enhancement Serums on its

20    website. *Id.*

21    Cash payments will be made pro rata from the Net Settlement Fund (*i.e.* the remainder of the

22    Cash Settlement Fund after payment of all Settlement Administrator Costs, the Class Representative

23    Service Payment, and Plaintiff's Counsel's Fees and Expenses). Assuming a claims rate of 2-3% (*i.e.*

24    between ███████████ claims), and that 90% of those claimants select cash, Settlement Class

25    Counsel roughly estimates that each claimant selecting cash will be paid between $█ and $█ from

26

27

28

the Net Settlement Fund.[2] Persinger Decl. ¶¶ 28-29. In other words, claimants selecting cash will be

paid between ██% to ██% of the purchase price of GrandeLash MD—Grande's best-selling Product

that retails for $68. *See id.* These benefits sufficiently compensate Class Members for the release of

their claims in this risky class action case where no relief could be guaranteed.[3] *See id.* at ¶¶ 32-35.

These percentages of recovery also assume that Plaintiff would have prevailed on her full

refund theory of damages.[4] But Defendant planned to contest Plaintiff's full refund theory on the

ground that Plaintiff and the Class obtained a benefit from the Enhancement Serums as they

---

[2] Here, Grande sold ████████████. Persinger Decl. ¶ 23. Purchases by repeat purchasers account for a large percent of the total unit sales. *Id.* After accounting for repeat purchases by the same purchaser, the parties roughly estimate that the class size here is around ████████ purchasers or fewer. *Id.* As Grande sells the Products through third-party retailers, the parties are unable to provide an exact estimation of class size. *Id.* Importantly, the amount of each Cash Benefit and Credit Benefit distributed to Settlement Class Members will depend on the number of Settlement Class Members who submit claims under the Settlement and, thus, will not be determined until after the claim period has closed.

[3] Notably, Settlements with benefits representing similar percentages of the purchase price have been approved. *See, e.g., In re Roundup Prods. Liab. Litig.*, 2023 WL 2723334, at *1 (N.D. Cal. Mar. 31, 2023) (approving settlement where "[c]laimants will receive more than 20 percent of the average retail price of products they purchased"); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (approving class action settlement where consumers would receive around $14.81 per claim which represented 30% of the amount that each claimant might have been entitled to at trial); Order Granting P.'s Mot. for Final Approval, *Wang v. StubHub, Inc.*, No. CGC-18-564120 (Cal. Super. Ct. S.F. Cty. Aug. 8, 2022) (approving Settlement where claimants had the option to choose between a credit from a non-reversionary $20 million credit fund, and a $20 cash payment from a reversionary cash fund of $2,500,000, where $20 cash payment represented a percentage of the average fee paid by StubHub users that was similar to the 34% to 55% of the purchase price here).

In addition, settlements with payments of a similar size, or less, have been approved. *See, e.g., Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *2, 5 (N.D. Cal. Sept. 20, 2016) (granting final approval of settlement where claimants received $20 plus the amount paid for service, and subclass members received either $19.80 or $39.48); *Aceves v. Autozone Inc.*, 2016 WL 11755166, at *2, 4, 7 (C.D. Cal. Nov. 18, 2016) (approving $5.7 million fund with the option of $20 cash payments or $40 gift cards to claimants); *Cho v. Seagate Tech. Holdings Inc.*, 177 Cal.App.4th 734, 739 (2009) (affirming claims-made settlement approval where consumers could choose between a cash payment estimated to average $7 or software with an estimated retail value of $40).

Settlements with common funds of a similar size have also been approved. *See, e.g., Ahdoot v. Babolat v. N. Am.*, 2014 WL 12586114, at *3, 11 (C.D. Cal. Oct. 7, 2014) (granting preliminary approval of class settlement with a $4.5 million fund); *Aceves v. Autozone Inc.*, 2016 WL 11755166, at *2, 4, 7 (C.D. Cal. Nov. 18, 2016).

[4] Plaintiff intended to seek a full refund on behalf of herself and similarly situated purchasers in California who bought the Enhancement Serums without knowing that they were, in fact, unapproved new drugs being illegally sold. In cases like this one that involve the illegal sale of a drug, courts approve full refunds to customers "finding that to permit an offset in such a case would legitimize the illegal sale." *See In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145 (Cal. Ct. App. 2010); *see also Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639-40 (S.D. Cal. 2015).

6

1   functioned as advertised. Absent a full refund, in the alternative, Plaintiff intended to rely on a price

2   premium theory of damages. Persinger Decl. ¶ 30. The maximum realistic price premium associated

3   with Grande's omissions and failure to warn would likely have been at most approximately 25% of

4   the purchase price. *Id.* The estimated $█ and $█ per claimant payment from the Net Settlement

5   Fund exceeds 25% of the purchase price of one unit of the Products. *Id.*

6        In addition, under the Settlement Grande will establish a $1,250,000 non-reversionary Credit

7   Settlement Fund for Settlement Class Members who would prefer credit. Settlement Class Counsel

8   estimates that each claimant will obtain the $300 maximum credit available without proof of purchase,

9   and that Settlement Class Members who submit proofs of multiple purchases will receive additional

10  credit funds. *Id.* ¶ at 31; Agreement at ¶¶ 2.3(a), 2.3(b); *see also, e.g., In re Toys R Us-Delaware, Inc.—Fair*

11  *and Accurate Credit Transactions ACT (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014)

12  (approving settlement that provided class members with vouchers of $5 or $30).

13       Finally, the injunctive relief provided by the Settlement is a valuable public benefit. *See Campbell*

14  *v. Facebook, Inc.* 951 F.3d 1106, 1123 (9th Cir. 2020) (injunctive relief requiring Facebook to post

15  disclosures about its message monitoring practices was valuable to absent class members); *Littlejohn v.*

16  *Copland*, 819 F. App'x 491, 494 (9th Cir. 2020) (consumers would derive value from injunctive relief

17  where it provided labeling changes, which would benefit repeat customers and was not agreed to prior

18  to the settlement); *Taylor v. Shutterfly, Inc.*, 2021 WL 5810294, at *6 (N.D. Cal. Dec. 7, 2021) ("It is

19  appropriate for the Court, in assessing whether the class is benefited by the settlement, to take into

20  account the injunctive relief obtained, even if the Court is unable to determine the exact monetary

21  value of such relief.").

22       The benefits from the Settlement, including (1) the option of a cash benefit, with no proof of

23  purchase (which Settlement Class Counsel roughly anticipates will be between $█ and $█, or █%

24  to █% of the purchase price of Grande's best-selling Product), (2) the option of a sizeable credit

25  benefit with no proof of purchase (which Settlement Class Counsel estimates will be $300), (3) the

26  option for even more credit with proof of repeat purchase, and (4) significant injunctive relief that will

27  better inform consumers about IC going forward is a fair compromise given the risks to recovery in

28  this action. Persinger Decl. ¶¶ 32-25.

1    These risks are particularly significant after the Ninth Circuit's recent ruling in *Nexus*

2    *Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040 (9th Cir. 2022). While

3    Plaintiff believes that *Nexus* would not alter this Court's findings that Plaintiff's claims were not

4    preempted—because *Nexus* comes from a distinguishable line of cases and because the Court here

5    correctly relied on *Wyeth v. Levine*, 555 U.S. 555, 578 (2009), which is controlling, and correctly applied

6    the implied preemption test established in *Perez v. Nidek*, 711 F.3d 1109 (9th Cir. 2013)—Plaintiff

7    recognized that *Nexus* created a new risk that the Court could find preemption.  Indeed, in a motion

8    for reconsideration, Defendant planned to point to language in *Nexus* where the Ninth Circuit

9    questioned the Federal Circuit's analysis in *Allergan v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (Fed. Cir.

10   2013)—another case on which this Court relied on in finding no preemption. If the Court had decided

11   to reverse its prior decision on Grande's Motion to Dismiss following *Nexus*, Plaintiff and the putative

12   class members would have obtained no recovery. *See* Persinger Decl. ¶ 33.

13           If Plaintiff's claims had survived Grande's anticipated motion for reconsideration, Plaintiff

14   would still have to overcome multiple obstacles, including obtaining class certification, defeating

15   summary judgment, winning a jury verdict at trial, and any appellate challenge. *Id.* at ¶ 34. Further, as

16   mentioned, Plaintiff expected Grande to challenge her proposal to calculate damages based on a full

17   refund on the ground that she and Class Members obtained value from the enhancement benefits

18   provided by the Products. *But see* fn. 4. Plaintiff also expected a *Daubert* challenge to any conjoint

19   analysis submitted to prove a price premium measure of damages. *See* Persinger Decl. ¶ 34. Given

20   Grande's arguments, continuing litigation risked no recovery at all. *Id.* Weighing the benefits of the

21   proposed Settlement against the risks supports a finding that the benefit to Settlement Class Members

22   is an excellent result, as well as within the range of reasonableness required for preliminary approval.

23           **d.  Other Cases**

24           This Settlement also resolves the nearly identical claims asserted in a later filed action brought

25   in the District of New Jersey, entitled *Nixon v. Grande Cosmetics, LLC*, No. 1:22-cv-06639-RMB-MJS

26   ("*Nixon I*") (filed Nov. 16, 2022). Before Grande's deadline to respond to the complaint, the District

27   of New Jersey stayed *Nixon I*, over the plaintiff's objection, in anticipation of the motion for

28   preliminary approval in the instant action. After the District of New Jersey stayed *Nixon I*, the same

1  counsel and plaintiff filed another action in the District of New Jersey asserting different, individual

2  claims on behalf of plaintiff Brenda Nixon against Grande. *Nixon v. Grande Cosmetics, LLC*, No. 1:23-

3  cv-01199-RMB-AMD ("*Nixon II*") (filed Mar. 1, 2023). The Settlement would thus resolve the nearly

4  identical claims in *Nixon I* but would allow plaintiff to pursue her individual claims against Grande in

5  *Nixon II*. [5]

6        Settlement Class Counsel learned of *Nixon I* only a few weeks before the parties' mediation

7  with Judge Gandhi, which was set to take place on December 9, 2022. Persinger Decl. ¶ 37. At the

8  time that Settlement Class Counsel learned of *Nixon I* the parties in this action had already spent four

9  months conducting discovery, Plaintiff had already survived Defendant's Motion to Dismiss, and the

10  parties' mediation with Judge Gandhi had long been scheduled. *Id.* After Settlement Class Counsel

11  learned of *Nixon I*, Settlement Class Counsel had a short, introductory video conference with plaintiff's

12  counsel in *Nixon I* and informed plaintiff's counsel about the upcoming mediation. *Id.* As settlement

13  negotiations were already underway, and as the mediation with Judge Gandhi had already been

14  scheduled, plaintiff's counsel in *Nixon I* did not participate in settlement negotiations. *Id.* While

15  Settlement Class Counsel informed Judge Gandhi of the recent filing of *Nixon I*, the existence of that

16  action did not significantly affect settlement negotiations. *Id.*

17       **e.  The Proposed Allocation Plan**

18        The proposed method of distributing relief will be effective. *See* Fed. R. Civ. P 23(e)(2)(C)(ii).

19  The parties have agreed upon an experienced Administrator, Angeion Group, to administer the

20  Settlement. Persinger Decl. ¶ 38. The claim form is simple, will be sent to Settlement Class Members

21  for whom Defendant maintains a physical address, and will be available online. Agreement at ¶ 5.4(b);

22  Declaration of Steven Weisbrot of Angeion Group, LLC Re: Proposed Notice Plan ("Admin. Decl.")

23  ¶¶ 20, 36, 47, 48; *id.* at Ex. E. It allows Settlement Class Members to elect the Credit Benefit or the

24

25

26  [5] The Class in *Nixon I* is defined as: "All individuals in the United States and its territories and possession who, from the beginning of the statutory period through the present, paid any money for

27  Enhancement Serums for personal, family, or household purposes." *Nixon I* also defines a New Jersey Subclass as: "All individuals in New Jersey who, from the beginning of the statutory period

28  through the present, paid any money for Enhancement Serums for personal, family, or household purposes." *Nixon I* Complaint (Nov. 16, 2022).

MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-00071-JD

1 Cash Benefit, and for Cash Claimants, allows them to choose a digital payment option. *Id.* The

2 Administrator will mail checks to those who request it. Admin. Decl. ¶ 58.

3       The Settlement "treats class members equitably relative to each other." FED. R. CIV. P.

4 23(e)(2)(D). The *pro rata* allocation of the Settlement, followed by additional distributions depending

5 on the availability of funds to Repeat Purchasers, is fair and reasonable because it provides equal relief

6 to all Settlement Class Members who make a claim and is consistent with the distribution of funds in

7 other settlements of common fund cases. *See, e.g., In re Facebook Biometric Info. Privacy Litig.*, 522

8 F.Supp.3d 617, 629 (N.D. Cal. 2021) (distribution that would provide "pro rata" share of common

9 fund treated class members equitably to one another and "weigh[ed] in favor of final approval"); *see*

10 *also infra* § XIII; Joint Status Report, *Lash Boost Cases,* No. CJC-18-004981 (Dec. 1, 2022) ("*Lash Boost*

11 *Status Report*"), Persinger Decl. Ex. 4 (discussing final distribution in comparable case involving a

12 similar IC containing lash product).

13       Without submitting any proof of purchase, Settlement Class Members submitting valid claims

14 may choose between two options: a Credit Benefit, with a maximum amount of $300, or a Cash

15 Benefit with a maximum amount of $150. Agreement at ¶¶ 2.2(a), 2.3(b), 5.4(a)

16       With proof of two purchases of the Enhancement Serums, those who selected the Credit

17 Benefit may be entitled to an additional benefit of up to $300 in credit (a "Credit Repeat Purchaser

18 Benefit"). *Id.* at ¶ 2.3(c). This credit amount for proof of two purchases, which may or may not be

19 available depending on remaining credit funds, is an amount in addition to the Credit Benefit of up to

20 $300 that Authorized Claimants selecting the Credit Benefit may obtain without proof of purchase.

21       With proof of two purchases of the Enhancement Serums, those who selected the Cash

22 Benefit, may be entitled to an additional benefit of up to $150 in cash (a "Cash Repeat Purchaser

23 Benefit"). *Id.* at ¶ 2.2(b). If, however, no funds remain for Cash Repeat Benefits, but credit funds

24 remain after distribution of the Credit Repeat Purchaser Benefits, Cash Repeat Purchasers may receive

25 up to $300 in credit in lieu of cash for their proof of two purchases. *Id.* at ¶ 2.3(d). This additional

26 $150 in cash or $300 in credit for proof of two purchases, which may or may not be available

27 depending on remaining funds, is an amount in addition to the Cash Benefit of up to $150 that

28 Authorized Claimants selecting the Cash Benefit may obtain without proof of purchase.

In the event that sufficient credit funds remain, all eligible Class Members who submit valid claims with proof of three or more purchases may receive up to another $100 in credit for each additional purchase proven. *Id.* at ¶ 2.3(e).

In the event funds still remain after all the foregoing distributions, the Credit will be distributed pro rata to all Repeat Purchasers who submitted proof of at least two purchases, regardless of whether they selected a Cash or Credit Benefit, or by such alternative plan of distribution that the parties agree on within thirty (30) day after allocation of the all Credit Benefits that is also approved by the Court, including, for example, pro rata distribution to all Authorized Claimants. *Id.* at ¶ 2.3(f).

**f.  The Anticipated Claims Rate**

Settlement Class Counsel roughly estimates a claims rate of between 2-3%, which is comparable to the rate in a nearly identical settlement involving Lash Boost—another eyelash serum containing IC, *see infra* § XIII, and to other consumer class action cases. *See, e.g., Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (approving settlement with 0.83% claims rate); *Broomfield v. Craft Brew Alliance, Inc.,* 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (2% claims rate); *Bostick v. Herbalife Int'l of Am., Inc.*, 2015 WL 12731932, at *27, 34 (C.D. Cal. May 14, 2015) (1% claims rate); *Touhey v. United States*, 2011 WL 3179036, at *7, 12 (C.D. Cal. July 25, 2011) (2% claims rate); FTC Staff Report: Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, at p. 25 (finding that email notice campaigns had a mean and median claims rate of 2% and 3%, respectively, and that the weighted mean claims rate for all cases requiring a claims process was 4% regardless of notice method); Persinger Decl. ¶ 28; Admin. Decl. ¶ 51.

**g.  Reversions**

There will be no reversion to Defendant. *See* Agreement at ¶¶ 2.1, 2.3.

**IV.          SETTLEMENT ADMINISTRATION**

**a.  The Selection of the Administrator**

Subject to Court approval, the Settlement Administrator is Angeion Group, a leading class action administration firm in the United States. Persinger Decl. ¶ 38; *see also id.* ¶ 42 (listing Settlement Class Counsel's engagements with Angeion in the last two years). Before selecting Angeion Group, based on overall cost and value to the Settlement Class Counsel engaged in a multi-week process of

considering bids from three reputable administrators, all of whom proposed similar methods of notice and claims payment. Persinger Decl. at ¶¶ 39-41; *see also* Settlement Guidelines ¶ 1(a).

While all three bids were relatively similar, all of the bids made different assumptions about various aspects of the distribution process. *Id.* at ¶ 40. Thus, to effectively compare the three bids, Settlement Class Counsel went back to all the administrators and asked them to make the same assumptions, which Settlement Class Counsel provided to them. *Id.* Those assumptions included, *inter alia*: the number of claims filed, the percent of those claims filed online, the percent of those claims filed by mail, the percent of those claimants electing a credit benefit, the percent of those claimants electing a cash payment, the percent of those claimants electing digital payment, the percent of those claimants requesting a paper check. *Id.* Settlement Class Counsel also asked each administrator to detail their procedures for identifying fraudulent claims, their procedures for protecting class member information, and their plans for dealing with claim deficiencies. *Id.*

To avoid a situation where costs increase during the actual administration of the settlement, after the three administrators raced to the bottom to provide the lowest bid at the outset, Settlement Class Counsel also made the uncommon request that each administrator agree to a capped amount of maximum costs. *Id.* at ¶ 41. After comparing this information in a detailed spreadsheet, Settlement Class Counsel selected Angeion because Angeion's proposal was the most cost effective overall and because Angeion's breadth of experience in publicizing and administering consumer class action settlements where only some contact information for class members is available made Angeion particularly well-suited for this project. *Id.*

**b. Administrative Costs and Protection of Class Member Data**

Angeion has estimated that the cost of administering the Settlement will be $550,000 and has agreed to cap the costs of administration at $585,000. Persinger Decl. ¶ 44; Admin. Decl. ¶ 59. These costs are reasonable in light of the size of the Settlement (including *inter alia* the number of direct mailings required, the costs of publishing notice, the costs of managing the submission of claim forms, and the costs associated with contacts from Settlement Class Members), and are cost effective compared to the bids received from the other two administrators. *Id.* The costs to administer the

1   settlement will be paid by Defendant from the non-reversionary Cash Settlement Fund. Agreement at

2   ¶ 2.1(a).

3          Further, Settlement Class Counsel is assured that Settlement Class Members' will be securely

4   handled. *See* Settlement Guidelines ¶ 2(b); Admin. Decl. ¶¶ 40-45 (addressing procedures for securely

5   handling class member data, including: technical, administrative, and physical controls; retention;

6   destruction; audits; crisis response; etc.); *see also id.* at ¶ 46 (confirming acceptance of responsibility and

7   maintenance of insurance in case of errors).

8   **V.        THE NOTICE PLAN**

9          The parties' proposed Notice Plan consists of direct notice in the form of Mailed Notice,

10  Email Notice, Internet Notice, and Publication Notice as well as a Settlement Website where

11  Settlement Class Members may view and download a Full Notice. Agreement at ¶ 5.2(a)-(b); *See, e.g.,*

12  *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); FED. R. CIV. P. 23(e)(1);

13  Admin. Decl. ¶¶ 15, 18, 20, 22, 30, 34-36; *id.* Exs. B (Full Notice), C (Mailed Notice), D (Email Notice).

14         On or before twenty (20) days after entry of this Order, the Settlement Administrator shall (1)

15  establish the Settlement Website; (2) cause the Email Notice to be sent to Settlement Class Members

16  for whom Defendant maintains an email address regardless of whether they are also being sent Mailed

17  Notice; and (3) cause the Mailed Notice to be sent to Settlement Class Members. Agreement at ¶¶

18  5.2(a), 5.2(e), 5.2(d). Before mailing the Mailed Notice, the Settlement Administrator shall update the

19  addresses provided by Grande with the National Change of Address database and other available

20  resources deemed suitable by the Settlement Administrator. *Id.* at ¶ 5.2(d); Admin. Decl. ¶ 21. If the

21  Mailed Notice is returned as undeliverable, the Settlement Administrator shall perform skip trace

22  research and shall make one (1) attempt to remail the Mailed Notice as soon as possible before the

23  Claim Filing Deadline. Agreement at ¶ 5.2(d); Admin. Decl. ¶ 21. Settlement Class Members for whom

24  Defendant maintains a physical address shall be sent Mail Notice regardless of whether they are also

25  being sent Email Notice. Agreement at ¶ 5.2(d).

26         Starting no later than twenty (20) days after entry of this Order, the Settlement Administrator

27  shall provide Internet Notice in the form of a social media campaign and/or Banner Advertisements

28  with at least a 75% reach. Agreement at ¶ 5.2(e); Admin. Decl. ¶ 13. Starting no later than twenty (20)

1   days after the entry of this Order, the Settlement Administrator shall provide print notice in a

2   California regional print publication for 4 weeks. Admin. Decl. ¶ 35 (amending publication notice

3   contemplated by Settlement Agreement at ¶ 5.2(g)).

4         At least fourteen (14) days prior to the Claim Filing Deadline, the Settlement Administrator

5   will provide two (2) reminder notices to the Settlement Class Members for whom they have sent Email

6   Notice. Agreement at ¶ 5.2(f).

7         In preparing the Full Notice, the Email Notice, and the Mailed Notice, the parties carefully

8   reviewed the guidance for Notice set forth in Settlement Guidelines ¶ 3, and in Settlement Guidelines

9   ¶ 5. *See* Admin. Decl. Exs. B (Full Notice), C (Mailed Notice), D (Email Notice); E (Claim Form). The

10   information in the Notices undoubtedly provides "sufficient detail" to allow class members with

11   adverse viewpoints to conduct further investigation and "come forward to be heard." *Lane v. Facebook,*

12   *Inc.*

13   696 F.3d 811 (9th Cir. 2012); *see also* Admin. Decl. ¶¶ 47-48. Accordingly, this notice program will fully

14   apprise Settlement Class Members of their rights under Rule 23(e) and should be approved.

15   **VI.      OPT-OUTS**

16         The Notice will advise Settlement Class Members of their right to opt out of the Settlement

17   or to object to the Settlement and/or to Settlement Class Counsel's application for attorneys' fees,

18   costs, and expenses and/or Service Award to the Class Representative, and of the associated deadlines

19   to opt out or object. Admin. Decl. Exs. B-D.

20         Settlement Class Members who choose to opt out must send a signed letter or postcard by

21   U.S. mail to the Settlement Administrator stating: (a) the name and case number of the Action; (b) the

22   full name, address, and telephone number of the person requesting exclusion; and (c) a statement that

23   he/she does not wish to participate in the Agreement, postmarked no later than thirty (30) days prior

24   to the Final Approval Hearing. Agreement at ¶ 5.7. Any Settlement Class Member who does not

25   submit a request to opt out in accordance with the deadlines and other requirements will be bound by

26   the Settlement. *Id.* at ¶¶ 3.1, 1.25. If a Settlement Class Member submits both a Claim Form and an

27   exclusion request, the Claim Form shall take precedence, and the exclusion request shall be deemed

28   to have been sent by mistake. *Id.* at ¶ 5.7.

1

**VII.     OBJECTIONS**

2      The Notice will advise Settlement Class Members of their right to object to the Settlement.

3  Admin. Decl. Exs. B-D. Settlement Class Members who have not submitted a timely written exclusion

4  request and who wish to object to the fairness, reasonableness, or adequacy of the Agreement, may

5  elect to object to the Agreement by sending a written objection to the Settlement Administrator that

6  (a) states the case name and number: *Mandel v. Grande Cosmetics, LLC*, No. 3:22-cv-00071 (N.D. Cal.);

7  (b) states the full name, address, and telephone number of the Settlement Class Member making the

8  objection; (c) contains a statement that he/she objects to the Agreement and the reasons for the

9  objections; and (d) is signed by the Settlement Class Member making the objection or an authorized

10 representative. Agreement at ¶ 5.6. The written objection must be submitted to the Settlement

11 Administrator by U.S. Mail. *Id.* The written objection must be submitted postmarked no later than

12 thirty (30) days prior to the Final Approval Hearing. *Id.* Settlement Class Counsel will ensure that all

13 objections sent by Settlement Class Members who have not retained their own counsel are filed with

14 the Court in advance of the Fairness Hearing. *Id.* at ¶ 5.6(c).

15     Settlement Class Members have the option to appear at the Fairness Hearing to object to the

16 fairness, reasonableness, or adequacy of the Agreement, or to the award of attorneys' fees, regardless

17 of whether they have timely submitted a written objection to the Settlement Administrator. *Id.* at ¶

18 5.6.(a).

19     Settlement Class Members who have retained their own counsel at their own expense to

20 prepare a written objection must have their counsel file the objection that counsel prepares on their

21 behalf on the docket with the United States District Court for the Northern District of California in

22 addition to mailing it to the Settlement Administrator as described above. *Id.* at ¶ 5.2(b). Settlement

23 Class Members may also have their own attorney retained at their own expense appear at the final

24 approval hearing if their counsel notices his or her intention to appear on the docket seven (7) days

25 before the fairness hearing. *Id.*

26 **VIII.     ATTORNEYS' FEES AND COSTS**

27     The Settlement Agreement contemplates Settlement Class Counsel petitioning the Court for

28 attorneys' fees, as well as reasonable expenses incurred by Settlement Class Counsel. The Settlement

1  Agreement provides that Settlement Class Counsel may seek attorneys' fees in an amount not to

2  exceed one-third (1/3) of the Total Settlement Amount, in addition to expenses. *Id.* at ¶ 2.6. Any

3  approved fees and expenses will be paid from the Cash Settlement Fund. *Id.* at ¶¶ 2.1(c), 2.6. The

4  parties did not negotiate or discuss fees until after the benefits to the Class Members had been

5  negotiated and memorialized in a term sheet. Persinger Decl. ¶ 45.

6       At least thirty-five days before the Objection Deadline and the Exclusion Deadline, Plaintiff

7  shall move the Court for approval of an award of Settlement Class Counsel's Fees. Agreement at ¶

8  2.6. Neither final approval, nor the size of the Cash Settlement Fund, are contingent upon approval

9  of the amount of requested Fee and Expense Award or the Service Award. *Id.* at ¶ 2.7.

10       Settlement Class Counsel has diligently tracked time throughout the case and has spent 1,097.5

11  hours litigating the case totaling $715,472.00 in lodestar with $20,294.26 in expenses. Persinger Decl.

12  ¶ 46; Settlement Guidelines ¶ 6. Counsel expects to spend significant additional time throughout the

13  approval process, notice, and claims administration. Persinger Decl. ¶ 47. A conservative estimate of

14  the multiplier that may be sought is 2.9, which is within the range commonly awarded in the Ninth

15  Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (surveying cases and

16  finding 83% of multipliers between 1.0 and 4.0, and 54% between 1.5 and 3.0). Any multiplier will

17  diminish over time given the substantial work needed to administer the Settlement.

18      **IX.**     **SERVICE AWARD**

19       Settlement Class Counsel may also petition the Court for up to $15,000 for Alexandra Mandel

20  as a Service Award to compensate her time and effort in the action. Agreement at ¶ 2.5. On the

21  deadline to file the Fee and Service Award Application, Plaintiff Mandel will submit a declaration

22  detailing her service to the Class, including the risks she took, the work she did, and the time she spent

23  litigating this action. Persinger Decl. ¶¶ 49-51. Any approved award will be deducted from the Cash

24  Settlement Fund prior to distribution to the Settlement Class Members. Agreement at ¶ 2.5.

25      **X.**     **CY PRES**

26       The Settlement Agreement specifies that any remaining funds from the Net Settlement Fund

27  will not be distributed to a cy pres recipient. Agreement at ¶ 2.2(c). If there are any funds that remain

28  unclaimed after allocation of the Cash Benefits and Cash Repeat Purchaser Benefits, the parties agree

to meet and confer on a plan for distribution within 30 days after allocation and will submit a plan of

distribution to the Court for approval. *Id.*

## XI. TIMELINE

The Settlement contemplates the following schedules for disseminating the Notice, requesting

exclusion from the Settlement Class, objecting to the Settlement, filing the Fee and Service Award

Application, filing the Motion for Final Approval, and submitting Claims.

| Event | Date |
|---|---|
| Settlement Administrator to establish Settlement Website | 20 days from Preliminary Approval Order |
| Settlement Administrator to send Mailed Notice to Settlement Class Members | 20 days from Preliminary Approval Order |
| Settlement Administrator to send Email Notice to Settlement Class Members | 20 days from Preliminary Approval Order |
| Settlement Administrator to provide Internet Notice | 20 days from Preliminary Approval Order |
| Settlement Administrator to provide Publication Notice | 20 days from Preliminary Approval Order |
| Deadline to file Fee and Service Award Application | 35 days before Objection Deadline, and 35 days before Exclusion Deadline |
| Objection Deadline | 55 days from Preliminary Approval Order and 30 days before Final Approval Hearing |
| Exclusion Deadline | 55 days from Preliminary Approval and 30 days before Final Approval Hearing |
| Deadline to file Motion for Final Approval | At least 14 days before Final Approval Hearing) |
| Final Approval Hearing | TBD |
| Settlement Administrator to provide 2 reminder notices to Settlement Class Members to whom Email Notice was sent | 14 days prior to Claim Filing Deadline |
| Claim Filing Deadline | 15 days after Final Approval Hearing |

## XII. CAFA

Within ten (10) days of the filing of the Settlement Agreement and Release with this Court,

the Administrator will send CAFA notice. Admin. Decl. ¶ 39; Settlement Guideline ¶ 10.

## XIII. COMPARABLE OUTCOMES

The Settlement is comparable to an earlier settlement reached in the *Lash Boost Cases*, No. CJC-

18-004981 (Cal. Super. Ct. S.F. Cty.). *See* Settlement Guideline ¶ 11; *Lash Boost* Settlement, Persinger

1  Decl. Ex. 5. The *Lash Boost Cases* concerned Rodan + Fields' sale of an eyelash serum containing IC.[6]

2  ████████████████████████████████████████████████████████████████

3  ███████. Persinger Decl. ¶ 54. ███████████████████████████████████, Rodan

4  + Fields also sells Lash Boost at a higher price point. *Id.* In that regard, a 3-month supply of Lash

5  Boost retails for around $150, while a 3-month supply of GrandeLash-MD Lash Enhancing Serum

6  retails for around $68.[7] *Id.* The *Lash Boost* Settlement was a nationwide settlement with a $38,000,000

7  common fund, consisting of a $30,000,000 cash settlement fund and a $8,000,000 credit settlement

8  fund. *Id.* at ¶ 56. The *Lash Boost* Settlement also provided for injunctive relief. *Id.*

9       The negotiations between the parties in this case often relied on the *Lash Boost* Settlement as

10  a point of reference. *Id.* ¶ at 57. The parties mutually selected the same mediator who had overseen

11  the negotiations of the *Lash Boost* Settlement—Hon. Jay C. Gandhi (Ret.) of JAMS. *Id.* ¶ at 58. The

12  parties negotiated the same type of fund—consisting of cash and credit options adjusted based on

13  Grande's smaller estimated relative market share given Grande's lower estimated sales numbers and

14  the lower price point for the Products. *Id.* ¶ at 59.

15       The injunctive relief provided for the by the Settlement in this case also mirrors the injunctive

16  relief obtained by the *Lash Boost* Settlement, albeit adjusted for differences in Grande's marketing

17  campaign. *Id.* ¶ at 60; *Compare* Exhibit 1 at Ex. F *with* Exhibit 5 at Ex. F.  For example, similar to the

18  *Lash Boost* Settlement, Grande has agreed to include Expanded Warning Statements in its outer

19  packaging, product insert, and website for all of its products containing IC, warning that consumers

20  under the age of 18 or consumers with certain medical conditions should not use the Products. *See*

21  Agreement at Ex. F. Grande has also agreed to update its FAQs to warn consumers of potential

22  adverse effects. *Id.*

---

[6] Ms. Persinger, the undersigned, was appointed as one of the two co-leaders of class counsel for settlement purposes in the *Lash Boost Cases*.  Persinger Decl. ¶ 53.

[7] The *Lash Boost* Settlement only included Rodan +Fields' eyelash product. Here, the Products include GrandeHair, which retails for $55 for 20 ml, and Grande Brow, which retails for $73 for a 4-month supply. Persinger Decl. ¶ 55. ████████████████████████████████████████ *Id.*

Other differences from the landscape between the Settlement reached in this action versus the *Lash Boost* Settlement include that, here, Grande intended to move for reconsideration on the issue of preemption based on the Ninth Circuit's decision in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040 (9th Cir. 2022), which did not exist while the *Lash Boost* Settlement was being negotiated.

Per the Settlement Guidelines ¶ 11(a), Plaintiff provides the following information about the comparable *Lash Boost* Settlement:

- **The release of claims.**
  - The release of claims in both actions are similar. Both were made on behalf of nationwide classes, even though the original lawsuits were <u>not</u> brought on behalf of a nationwide class. Both release claims related to the false marketing of products containing IC. And both specifically exclude personal injury claims from the claims released. *Compare Lash Boost* Settlement, Persinger Decl. Ex. 5, at ¶¶ 1.36, 3.1, 3.2, 3.3 *with* Agreement at ¶¶ 1.35, 3.1, 3.2, 3.3.

- **The total number of class members.**
  - While Rodan + Fields provided the number of units sold nationwide and in California to the California Superior Court as a proxy for the number of class members at preliminary approval, it marked that information confidential, and the Court allowed its redaction from the record. Plaintiff's counsel is thus unable to provide the "the total number of class members" for the *Lash Boost* Settlement as requested in the Settlement Guidelines ¶ 11(a).
  - Here, Grande sold ███████████. Persinger Decl. ¶ 23. Purchases by repeat purchasers account for a large percent of the total unit sales. *Id.* After accounting for repeat purchases by the same purchaser, the parties roughly estimate that the class size here is around ██ ███████ purchasers or fewer. *Id.*

- **The total number of class members to who notice was sent.**
  - Because it sold Lash Boost through the use of consultants and mail, Rodan + Fields had address information available to send direct notice to 2.4 million class members. Persinger Decl ¶ 61.
  - Here, because Grande does not use consultants to directly sell to consumers, but still has address information to send direct notice to 275,264 Settlement Class Members who purchased through its website. Admin. Decl. ¶ 15.

- **The methods of notice.**
  - The administrator of the *Lash Boost* Settlement sent 2,455,673 email notices to Settlement Class Members, and then 116,622 postcard notices to Settlement Class Members whose email notices were returned undeliverable, of which 106,379 were successfully delivered. Persinger Decl ¶ 61. The administrator also sent reminder notices via email around the time of the claims deadline. *Id.*
  - Here, notice will be sent to 275,264 Settlement Class Members via email and 270,170 Settlement Class Members via postcard. Admin. Decl. ¶¶ 15, 20. Differently than with the *Lash Boost* Settlement, here, Class Members will get both forms of notice if Grande has both their email and mailing addresses. *See* Agreement at ¶¶ 5.1(d)-(e). As in *Lash Boost*, reminder notice will be sent via email. *Id.* at ¶ 5.1(f). Unlike the Lash Boost Settlement, the

Notice Plan here contemplates substantial Internet Notice. *Id.* at ¶ 5.1(c); Admin. Decl. ¶¶ 22-34.

- **The number of authorized claim forms submitted.**
  - o At distribution of the *Lash Boost* Settlement, there were a total of 99,156 Authorized Claimants, with 96,185 selecting a Cash Benefit, and 2,971 selecting a Credit Benefit. *Lash Boost* Status Report, Persinger Decl. Ex. 4.
  - o Here, based on Settlement Class Counsel's experience, and based on Counsel's consultation with the Administrator, Settlement Class Counsel roughly anticipates that between ████ and ████ claims will be submitted. Persinger Decl. ¶ 29.
- **The claims rate.**
  - o After accounting for duplicates, fraudulent claims and the like, at distribution, Settlement Class Counsel estimates a claims rate of around 2%-3% in *Lash Boost*. Persinger Decl. ¶ 62.
  - o Here, Counsel anticipates a similar claims rate. Persinger Decl. ¶ 28; Admin. Decl. ¶ 51.
- **The average recovery per class member or claimant.**
  - o The *Lash Boost* Settlement returned $164 to Authorized Claimants who selected a Cash Benefit, and $250 to Authorized Claimants who selected a Credit Benefit (the maximum amount of credit available without proof of purchase). Claimants who submitted proof of repeat purchases also obtained additional amounts in credit. *Lash Boost* Status Report, Persinger Decl. Ex. 4
  - o Here, assuming a similar claims rate, and a similar rate of selection of cash and credit, Plaintiff roughly estimates that Settlement Class Members selecting cash will receive between $██ and $██, and that Settlement Class Members selecting credit will receive $300 (the maximum amount of credit available without proof of purchase). Persinger Decl. ¶¶ 28-29, 31. Claimants who submit proof of repeat purchases may also obtain additional amount in credits. Agreement at ¶ 2.3(c).
- **Fees and Service Awards.**
  - o Both the *Lash Boost* Settlement and the Settlement here permitted counsel to seek fees of up to 1/3 of the total combined settlement funds and $15,000 for Settlement Class Representatives. Those awards were approved in *Lash Boost*. Order Granting Ps.' Mot. for Final Approval of Class Action Settlement and App. for Fees, Costs, and Service Awards, *Lash Boost Cases*, No. CJC-18-004981 (Cal. Super. Ct. S.F. Cty. Sept. 28, 2022), Persinger Decl. Ex. 6.

## XIV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019). Whether to approve a class action settlement is committed to the sound discretion of the trial judge. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Courts evaluate the requirements of Rule 23(e) as well as the traditional factors weighed by courts when evaluating the fairness of a proposed settlement. *Wong v. Arlo Techs., Inc.*, 2021 WL

1  1531171, at *5 (N.D. Cal. Apr. 19, 2021). Courts in the Ninth Circuit have traditionally used a multi-

2  factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. *See, e.g.,*

3  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). That test includes the following

4  factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration

5  of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

6  offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

7  experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction

8  of the class members to the proposed settlement." *Id.*; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

9  1026 (9th Cir. 1998). "This list is not exclusive and different factors may predominate in different

10  factual contexts." *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021).

11  **XV.       THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

12        The Settlement, which is the result of good-faith, informed, arm's-length negotiation between

13  competent counsel with the aid of an experienced mediator, satisfies each factor for preliminary

14  approval in the Ninth Circuit and under Rule 23(e). *See Hanlon*, 150 F.3d at 1026; FED. R. CIV. P. 23(e).

15        The strength of Plaintiff's case when weighed against the risks of further litigation supports a

16  preliminary finding that the $6,250,000 Total Settlement Amount and priceless injunctive relief

17  provided by the Settlement is a fair compromise for release of Settlement Class Members' claims. *See*

18  *supra* § III(c) *and* FED. R. CIV. P. 23(e)(2)(C)(i); *see also supra* § III(e) (discussing FED. R. CIV. P

19  23(e)(2)(C)(ii) and FED. R. CIV. P. 23(e)(2)(D)). The parties also engaged in sufficient discovery so that

20  Settlement Class Counsel could make an informed decision about the value of Plaintiff's case relative

21  to the benefits offered by the Settlement. *See supra* § II; *see also Banks v. Nissan N. Am., Inc.*, 2015 WL

22  7710297, at *8 (N.D. Cal. Nov. 30, 2015).

23        In addition, the Settlement was negotiated at arm's length by experienced counsel with the

24  assistance of an experienced jurist and mediator, Hon. Jay C. Gandhi (Ret.) of JAMS. *See* FED. R. CIV.

25  P. 23(e)(2)(B); Persinger Decl. ¶¶ 17-18, 58.

26        Not only are Settlement Class Counsel experienced in class action litigation, Settlement Class

27  Counsel was one of the co-leaders of class counsel who negotiated the *Lash Boost* Settlement, *see supra*

28  § XIII, a case concerning cosmetic products containing IC. As a result, Settlement Class Counsel is

1   well-positioned to evaluate the issues in this case with the benefit a nuanced understanding of the legal

2   and factual issues involved in this case developed over several years litigating these issues. Persinger

3   Decl. ¶¶ 53, 67; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

4        Notably, Judge Gandhi was uniquely positioned to assist in the neutral evaluation of the risk

5   versus benefits of settlement in this case because Judge Gandhi also oversaw negotiations of the *Lash*

6   *Boost* Settlement. Persinger Decl. ¶¶ 17-18, 58; *see also, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926

7   F.3d 539, 570 (9th Cir. 2019)(stating that the Ninth Circuit "put[s] a good deal of stock in the product

8   of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action

9   settlement); *Adams v. Inter-Con Sec. Sys., Inc.*, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *see also*

10  *Avina v. Marriott Vacations Worldwide Corp.*, 2019 WL 8163642, at *6 (C.D. Cal. Oct. 25, 2019); *In re*

11  *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).

12       Additionally, the Settlement includes none of the indicia of collusion identified by the Ninth

13  Circuit. A comparison to the facts in this case to the distinguishable facts at issue in *Briseno v. Henderson*,

14  998 F.3d 1014, 1020-24 (9th Cir. 2021), where the Court evaluated the factors established in *Bluetooth*

15  *Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) and found collusion, confirms that

16  there is no evidence of collusion in this case.

17       In *Briseno*, the Ninth Circuit found evidence of collusion in a claims-made settlement where

18  most class members would only receive 15 cents, where less than a million dollars would go to class

19  members on a claims-made basis while seven times that amount would go to lawyers in attorney's

20  fees, where available funds would return to defendant under the claims-made structure, and where

21  injunctive relief was illusory because the defendant had sold the company and thus was in position to

22  implement practice changes. *See Briseno*, 998 F.3d at 1020-24.

23       Here, on the other hand, Settlement Class Members will receive a cash or credit payment from

24  a non-reversionary Settlement Fund that will far exceed the few cents paid in *Briseno*, and injunctive

25  relief will benefit future consumers of Defendant's products. *Cf. Bluetooth*, 654 F.3d at 947 (flagging

26  warning signs of collusion that are not present here including a reversion of settlement funds to a

27  defendant, and an agreement by defendant to pay counsel a disproportionate amount of the settlement

28  as compared to the amount of funds going to the class). And, unlike *Briseno* where attorney's fees were

1    grossly disproportionate to the amount of benefit to the Class, here, subject to the Court's

2    consideration of a detailed fee application, the proposed award of attorneys' fees are also fair. *See* FED.

3    R. CIV. P. 23(e)(2)(C)(iii). Settlement Class Counsel will file a separate motion seeking approval of

4    attorneys' fees in an amount not to exceed 1/3 of the total value of the Settlement Fund, plus their

5    reasonable expenses of litigation. *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

6    (affirming award of attorneys' fees in the amount of 33% of the common fund); *In re Mego Fin. Corp.*

7    *Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of 33.3%); *Vedachalam v. Tata Consultancy*

8    *Servs., Ltd*, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013) (listing "many cases in this circuit that

9    have granted fee awards of 30% or more," and stating that a fee award in the rage of 30% "is only

10   modestly more than the Ninth Circuit's 25% 'benchmark' percentage," and "well within the usual

11   range of percentages awarded").[8]

12       Lastly, there is no government participant and, because the Court has not yet approved the

13   Class Notice, the Settlement Class has not had an opportunity to react, so these factors are neutral.

14   *See Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. Apr. 27, 2019).

15       Accordingly, a review of the relevant factors supports the conclusion that the Settlement falls

16   within the "range of reason" such that the Court should preliminarily approve the Settlement, order

17   that notice be sent to the Settlement Class, and schedule a Final Approval Hearing.

18   **XVI.    ADEQUATE REPRESENTATION**

19       Pursuant to Rule 23(e)(2)(A), Plaintiff and Settlement Class Counsel have adequately

20   represented the Settlement Class. Plaintiff has "actively participated in the prosecution of this case,"

21   *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021), and "[t]here are

22   no indications that [Plaintiff has] failed to adequately represent the interests of the class," *Moreno v.*

23   *Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021). Plaintiff

24   assisted Settlement Class Counsel by reviewing the pleadings, responding to interrogatories, searching

25

26   ---
     [8] In addition, the parties negotiated a cap on attorneys' fees and a service award only after they had
     agreed on the relief for the Settlement Class, Persinger Decl. ¶ 45, which favors final approval. *See,*
27   *e.g., Walker v. Life Ins. Co. of the Sw.*, 2021 WL 6618814, at *10 (C.D. Cal. June 7, 2021) (holding that
     the fact that "[t]he provisions in the Settlement Agreement regarding attorneys' fees and costs were
28   negotiated following negotiation of relief to the Class" weighed against a finding of collusion);
     *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *8 (C.D. Cal. Sept. 25, 2013) (same).

1    for and producing documents, being available during mediation, and reviewing the Settlement

2    Agreement. Persinger Decl. ¶ 49. Plaintiff has no conflicts with the other Settlement Class Members

3    and has adequately represented them in the litigation. *Id.* at ¶ 50.

4           Settlement Class Counsel have also adequately represented the Settlement Class. Settlement

5    Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of

6    nationwide class action cases. Persinger Decl. ¶¶ 66-68; *id.* at Exs. 2-3. Here, Settlement Class Counsel

7    briefed and argued against Defendant's motion to dismiss and successfully obtained key documentary

8    and written discovery as they prepared to move for class certification and to make informed decisions

9    while negotiating the Settlement. *Id.*

10   **XVII.        CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

11          On a motion for preliminary approval, the parties must also show that the Court "will likely

12   be able to … certify the class for purposes of judgment on the proposal." Fed. R. Civ. P.

13   23(e)(1)(B)(ii); *see also* Fed. R. Civ. P. 23(a) and (b)(3).

14          With an estimated ███████████ Settlement Class Members, the Settlement Class as defined

15   meets Rule 23(a)'s numerosity requirement. Persinger Decl. ¶ 23; s*ee, e.g., Celano v. Marriott Int'l Inc.*,

16   242 F.R.D. 544, 549 (N.D. Cal. 2007) (numerosity is satisfied with at least 40 members).

17          The Settlement Class also satisfies the commonality and predominance requirements. *Wal-*

18   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); Fed. R. Civ. P. 23(b)(3). The Settlement Class's

19   claims here depend on the common contention that Defendant failed to disclose material information

20   about the Enhancement Serums, including the fact that the Enhancement Serums contain a drug

21   ingredient and the adverse effects associated with that ingredient.

22          Typicality is satisfied because both Plaintiff's and the Class Members' claims arise from

23   Defendant's alleged misleading marketing of the Products such that they suffered the same injury and

24   have the same interests. Fed. R. Civ. P. 23(a)(3); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th

25   Cir. 1992). And, as discussed above, Plaintiff and Settlement Class Counsel are adequate. Fed. R. Civ.

26   P. 23(a)(4); *supra* § XVI. Class certification here is also "superior to other available methods for fairly

27   and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class-wide resolution is the only

28

practical method of addressing the alleged violations at issue in this case. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

**XVIII.    CONCLUSION**

Plaintiff requests that the Court grant preliminary approval, appoint her as Settlement Class Representative, appoint Tycko & Zavareei LLP and Edelsberg Law, P.A. as Settlement Class Counsel, direct that Notice be distributed to the Settlement Class, and schedule a Final Approval Hearing.

DATED: April 21, 2023                                   Respectfully Submitted,

*/s/ Annick M. Persinger*
Annick M. Persinger
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Allison W. Parr (*pro hac vice*)
*aparr@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900

Scott Edelsberg (CA Bar No. 330990)
*scott@edelsberglaw.com*
**EDELSBERG LAW, P.A.**
1925 Century Park East, #1700
Los Angeles, California 90067
Telephone: (310) 438-5355

*Attorneys for Plaintiff*